ASOCIACIÓN COOPERATIVA DEL FALANSTERIO, demandante y apelada, *v.* ANTONIO NAVARRO, JOSÉ PEÑA RIVERA y LUIS ÁLVAREZ GARCÍA, demandados y apelantes.

Núm. 10201.—*Sometido:* Enero 2, 1951. *Resuelto:* Febrero 14, 1952.

*Pedro E. Anglade, Hipólito Marcano* y *José M. Valentín Esteves,* abogados, respectivamente, de los apelantes; *Rodolfo F. Aponte,* abogado de la apelada.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El 8 de noviembre de 1948 la apelada, Asociación Cooperativa del Falansterio, inició ante el entonces Tribunal de Distrito de San Juan acción de desahucio por detentación contra cinco demandados. Antes del juicio, uno de los demandados entregó el apartamiento que ocupaba y se desistió de la acción en su contra. El 30 de diciembre de 1949 se dictó sentencia declarando con lugar la demanda contra los otros cuatro demandados. De éstos, sólo Antonio Navarro, José

Peña Rivera y Luis Álvarez García apelaron para ante este Tribunal.

Los hechos que dieron origen a este litigio pueden resumirse en la siguiente forma:

El Gobierno de los Estados Unidos de América era dueño en pleno dominio de un solar de 11,778 metros cuadrados de terreno en Puerta de Tierra, San Juan, y de un grupo de ocho edificios, en él enclavados, con un total de 216 apartamientos dedicados a vivienda mediante alquiler, todo lo cual constituía el proyecto conocido por Falansterio, administrado por la Puerto Rico Reconstruction Administration (PRRA), una instrumentalidad del Gobierno de los Estados Unidos. En mayo de 1947 los inquilinos del Falansterio decidieron gestionar su compra y hacer proposiciones al Gobierno de los Estados Unidos para la adquisición de dicho solar y edificios.

En 13 de enero de 1948 la PRRA comunicó al comité nombrado por los inquilinos para realizar dichas gestiones las condiciones de la transacción. Dichas condiciones, en lo pertinente a este caso, son las siguientes: los inquilinos formarían una cooperativa que haría la compra al Gobierno de los Estados Unidos; no podría ser miembro de la cooperativa a organizarse ninguna persona que fuera dueña o condueña de una vivienda, o que tuviera un ingreso mayor de $300 mensuales; el gobierno vendería los bienes a la cooperativa trasmitiéndole el uso y posesión de los mismos, pero reteniendo el gobierno el título de dichos bienes hasta que el precio de venta se hubiera pagado en su totalidad; la cooperativa a su vez vendería a cada uno de sus socios el usufructo del apartamiento en que dicho socio estuviere viviendo, debiendo velar porque la propiedad fuera usada *exclusivamente* como residencia privada de los mismos, y no *arrendaría* (entre otras prohibiciones expresas) los bienes sin el previo consentimiento escrito del gobierno.

La cooperativa fué organizada de acuerdo a las leyes vigentes. El 16 de junio de 1948, la PRRA envió a cada uno de los 216 inquilinos del Falansterio una carta en la que daba

por terminados los contratos de arrendamiento con fecha 30 de junio de 1948.

El 1ro. de julio de 1948 el Gobierno de los Estados Unidos traspasó a la cooperativa el uso y la posesión del Falansterio y 211 inquilinos formalizaron contratos adquiriendo de la cooperativa el usufructo del apartamiento en que vivían. De los cinco inquilinos restantes, ninguno de los cuales era elegible para pertenecer a la cooperativa, dos sometieron contratos que no fueron aceptados por ésta. Los otros tres no hicieron gestión alguna para asociarse. Los cinco, sin embargo, continuaron ocupando sus respectivos apartamientos y pagando a la cooperativa la misma mensualidad que pagaban los propios socios bajo su contrato de compraventa de usufructo, por cuyos pagos se les extendían los recibos correspondientes. El 1ro. de septiembre de 1948 la cooperativa les requirió para que desalojaran y entregaran los apartamientos en que vivían, ya que no deseaba renovar los contratos de arrendamiento que habían existido entre ellos y los Estados Unidos de América. Poco tiempo después se inició la presente acción con el resultado anteriormente indicado.

En apelación los demandados imputan al tribunal inferior la comisión de los siguientes errores: (1) decidir que no se estableció relación contractual entre la demandante y los demandados a partir del 1ro. de julio de 1948, y decidir que estos últimos eran meros detentadores; (2) sostener que no era de aplicación el artículo 12-B de la Ley de Alquileres Razonables, según fué enmendada por la Ley núm. 24 de 21 de agosto de 1948; (3) sostener que no era de aplicación la sección 209 (c) de la Ley Federal de Inquilinato; (4) resolver que no había indebida acumulación de partes demandadas y (5) declarar con lugar la demanda.

Argumentando su primer señalamiento de error sostienen los apelantes que desde el 1ro. de julio de 1948 en adelante, luego de haber obtenido la demandante la posesión y uso del Falansterio, ellos continuaron pagando, y la demandante aceptando, la misma renta que con anterioridad a

dicha fecha ellos venían pagando por sus respectivos aparta-
mientos al Gobierno de los Estados Unidos bajo los contratos
de arrendamiento en vigor hasta el 30 de junio de 1948;
que la demandante llegó hasta a aumentarle dicha renta en
la suma de $2 mensuales, la que ellos igualmente pagaron,
por lo cual se creó una relación contractual de arrendador y
arrendatario entre la demandante y los demandados, no siendo
ellos por lo tanto meros detentadores, como resolvió el tri-
bunal inferior.

No tienen razón los apelantes. El hecho de que la coope-
rativa aceptara los pagos hechos por los demandados y les
expidiera recibos por dichos pagos, aun incluyendo el aumento
de $2—que no fué hecho a ellos como arrendatarios, sino en
forma general respecto a los 216 apartamentos, a fin de
ajustar los ingresos de la demandante a los compromisos con-
traídos con el Gobierno de los Estados Unidos bajo el con-
trato de compraventa suscrito entre ellos—no creó una nueva
relación contractual entre la cooperativa y los demandados,
ya que la primera, bajo los términos del contrato de refe-
rencia—y sus cláusulas de incorporación—no podía arrendar
los apartamentos *sin el previo consentimiento escrito del
gobierno*, teniendo la obligación de velar "porque la propie-
dad sea usada exclusivamente como residencia privada de
sus socios" y ya hemos dicho anteriormente que ninguno de
los demandados era elegible para ser *socio* de la cooperativa.

Los demandados, según surge de la prueba, tenían conoci-
miento de los términos y condiciones—que se incluyeron en
el contrato—estipulados por el Gobierno Federal para la com-
praventa de las propiedades por haber intervenido en reu-
niones celebradas y discusiones habidas a tales fines. En
consecuencia, ellos sabían que no eran elegibles para ser so-
cios y que la cooperativa no podía venderles el usufructo—
primordial propósito y condición esencial de la venta hecha
por el Gobierno de los Estados Unidos—ni cederles los apar-
tamientos *en arrendamiento*, pues dicho contrato contenía
prohibiciones expresas a ese respecto. La cooperativa, por

tanto, nunca tuvo la intención de crear relación contractual alguna de arrendador y arrendatario·con los demandados al recibir de ellos los indicados pagos, y los demandados, a su vez, no podían esperar la creación de dicha relación pues sabían la limitación con que la cooperativa actuaba, dentro de sus cláusulas de incorporación y su contrato con el Gobierno de Estados Unidos. Siendo así, el concepto en que fueron dichos pagos hechos—y recibidos—fué el de *compensación* por el uso de la propiedad, y no el de *alquiler*. Véanse, únicamente en cuanto a este último extremo, *Ball* v. *Vilá*, 67 D.P.R. 415; *Vélez* v. *San Miguel*, 68 D.P.R. 575; *Vidal* v. *Mason*, 68 D.P.R. 600; *Vidal* v. *Corte*, 71 D.P.R. 582 y *Díaz* v. *Morales, Per Curiam*, 71 D.P.R. 692.

██ Tampoco tienen razón en cuanto al segundo error señalado. El período de espera de seis meses establecido por el artículo 12-B, después de haber ·notificado el arrendador por escrito y de modo fehaciente al inquilino su intención de recobrar la propiedad, antes de la presentación de la demanda de desahucio, no puede invocarse en este caso. El título de propiedad sobre el inmueble objeto de la presente acción permaneció en el vendedor, Estados Unidos de América, por haberlo éste retenido hasta el pago total del precio adeudado. Dicha propiedad, por lo tanto, está exenta de las disposiciones de la Ley de Alquileres Razonables—núm. 464 de 25 de abril de 1946—por virtud del artículo 4 de la misma, que exime de sus disposiciones las propiedades pertenecientes a "las agencias o instrumentalidades del Gobierno de los Estados Unidos de América". La enmienda que a dicho artículo 4 introdujo la Ley núm. 395 de 13 de mayo de 1947—y que mantuvo la 202 de 14 de mayo de 1948—en el sentido de que "dichas propiedades estarán sujetas a las disposiciones de esta Ley en caso de que los arrendatarios subarrienden las mismas a personas particulares" no trae al inmueble objeto de la presente acción dentro de los términos de dicha ley, pues la demandante no es una *arrendataria* y sí una *usufructuaria*

del inmueble en cuestión, bajo el contrato de compraventa con el Gobierno de los Estados Unidos, y porque, en consecuencia, no ha *subarrendado* ni en todo ni en parte dicho inmueble a personas particulares.

El tercer error señalado no fué cometido. Las disposiciones de la sección 209 (c) de la Ley Federal de Inquilinato de 1948, relativa al período de espera de sesenta días antes del desalojo, luego de dar el arrendador notificación escrita de que se desea recobrar la posesión de la vivienda, si bien existía en la legislación federal vigente a la fecha de la radicación de la demanda, fué eliminada de la misma por la Ley Pública núm. 31 del 81 Congreso, primera sesión, que comenzó a regir el 1ro. de abril de 1949. 50 USCA App. 1899. Pero aún en el supuesto de que tal requerimiento hubiera existido, ya había transcurrido un término mucho mayor que el de sesenta días desde que aquél se hizo hasta que se dictó sentencia. *Alméstica* v. *Lafitte*, 69 D.P.R. 350.

██ Los errores cuarto y quinto no han sido argumentados por los apelantes y no habremos de considerarlos.

Ahora bien: Iniciado ya el procedimiento de desahucio en este caso, se aprobó el 1ro. de abril de 1949 un nuevo reglamento por el Acelerador de Viviendas, bajo la nueva legislación federal de inquilinato que comenzó a regir en dicha fecha. Por la sección 825.6 (a) (¹) del mismo se dispuso, en su primer párrafo:

"825.6—*Lanzamiento del inquilino*—(a) *Restricciones con respecto al lanzamiento del inquilino*. Mientras el inquilino pague el canon de arrendamiento a que el dueño tiene derecho, el inquilino no podrá ser lanzado de ninguna propiedad arrendada

(¹) El texto en inglés de la misma es el siguiente:

"825.6—*Removal of tenant*—(a) *Restriction on removal of tenant.* So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, nothwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation here-

.mediante acción de desahucio o de recobrar la posesión, o en cualquier otra forma, ni ninguna persona intentará el desahucio o recobrar la posesión de la propiedad arrendada, **no obstante el hecho de que el inquilino no goce de un contrato de arrendamiento o de que éste o cualquier otro convenio de arrendamiento haya expirado o se haya terminado en alguna forma, e independientemente de cualquier contrato, arrendamiento, convenio u obligación contraídos antes o después de esta reglamentación, que dispongan la entrega de la posesión, o mediante sentencia dictada luego de admitir el inquilino haber violado los términos de su contrato, o que disponga en contrario a ello, excepto por uno o más de los fundamentos especificados en este inciso** (*a*)**, o a menos que el dueño haya obtenido un certificado a tenor con el inciso** (*c*) **de esta sección;** *Disponiéndose, sin embargo,* **Que ninguna disposición de esta sección será interpretada en el sentido de autorizar el lanzamiento de un inquilino a menos que tal lanzamiento esté autorizado por ley local.**" (Negritas nuestras.)

[No es necesario enumerar las seis causas de desahucio incluídas en dicha sección, por no fundarse la presente acción en ninguna de ellas.]

Por la sección 825.6 (*c*) : (²)

___

tofore or hereafter entered into which provides for surrender of possession, or for entry of judgment upon the tenant's confession for breach of the covenants thereof, or which otherwise provides contrary hereto, except on one or more of the grounds specified in this paragraph (*a*), or. unless the landlord has obtained a certificate in accordance with paragraph (*c*) of this section: *Provided, however,* That no provisions of this section shall be construed to authorize the removal of a tenant unless such removal is authorized under local law."

(²) El texto inglés es el siguiente:

"(*c*) *Eviction certificate; grounds for issuance.* No tenant shall be removed or evicted on grounds other than those stated in paragraph (*a*) of this section, unless on petition of the landlord the Housing Expediter certifies that the landlord may pursue his remedies in accordance with the requirements of local law. The certificate shall authorize the pursuit of local remedies at the expiration of the waiting period specified in paragraph (*d*) of this section. The Expediter shall so certify if he finds that removals or evictions of the character proposed are not inconsistent with the purposes of the act or this regulation and would not be likely to result in the circumvention or evasion thereof. The Expediter shall so find in the following cases:

"(1) .      .      .      .      .      .      .      .      .

"(*b*) In the case of housing accommodations in a structure or premises owned by a cooperative corporation or association, no certificate shall be

"(*c*) *Certificado de evicción; causas para su expedición.* Ningún inquilino será lanzado de la propiedad arrendada por causas ajenas a las que se especifican en el inciso (*a*) de esta sección, a no ser que previa solicitud del dueño al Acelerador de Viviendas éste certifique que el dueño puede obtener su remedio de acuerdo con los requisitos de la ley local. El certificado autorizará la obtención del remedio local a la expiración del período de espera contenido en el inciso (*d*) de esta sección. El Acelerador así lo certificará si llega a la conclusión de que los desahucios del carácter propuesto no son inconsistentes con los fines de la ley o de este reglamento y no resultarían en la evasión o burla de éstos. Así lo resolverá el Acelerador en los siguientes casos:

"(1) .     .     .     .     .     .     . .     .     .     .

"(*b*) En el caso de que la facilidad de vivienda se halle en un edificio o propiedad de una corporación o asociación cooperativa, el Acelerador no expedirá el certificado a ninguna persona que haya comprado acciones o cualquier otro interés en tal cooperativa, que tenga derecho por motivo de tal posesión de acciones o cualquier otro interés, a la posesión de tal facilidad de vivienda en virtud de un contrato de arrendamiento con el dueño o en alguna otra forma, a menos que las acciones o algún otro interés en la cooperativa, hayan sido comprados por personas que son inquilinos en la propiedad por lo menos del 65 por ciento de la facilidad de vivienda en el edificio o propiedad y tengan derecho por motivo de tal dominio a los contratos de arrendamiento de las facilidades de vivienda halladas en tal edificio o propiedad."

Y por la 825.6 (*d*) (³) relativa al período de espera antes

issued by the Expediter to a purchaser of stock or other evidence of interest in such cooperative, who is entitled by reason of such ownership of stock or other evidence of interest to possession of such housing accommodations by virtue of a proprietary lease or otherwise, unless stock or other evidence of interest in the cooperative has been purchased by persons who are tenants in occupancy of at least 65 percent of the housing accommodations in the structure or premises and are entitled by reason of such ownership to proprietary leases of housing accommodations in the structure or premises."

(³) El texto inglés es el siguiente:

"(*d*) *Eviction certificates; waiting period.* Certificates issued under paragraph (*c*) of this section shall authorize the pursuit of local remedies at the expiration of three months from the date of the filing of the petition; *Provided, however,* That:

de que se inicie el procedimiento de desahucio bajo la ley local, se dispuso:

"(*d*) *Certificados de evicción; período de espera*. Los certificados expedidos a tenor con el inciso (*c*) de esta sección, autorizarán la obtención de remedios locales a la expiración de tres meses contados a partir de la fecha de la radicación de la petición; *Disponiéndose, sin embargo,* Que:

"(1) En casos bajo el inciso (*c*) (5) de esta sección el período de espera será de seis meses;

"(2) En casos bajo el inciso (*c*) (2) (*a*) de esta seccción el período de espera se extenderá por lo menos hasta dos meses desde la fecha en que se expida el certificado;

"(3) En cualquier caso en que el Acelerador concluya que con motivo de circunstancias excepcionales, se causarían al dueño daños irreparables, entonces el Acelerador puede prescindir de todo o parte del período de espera."

Por la sección 825.6 (*h*) relativa a los casos pendientes en las cortes el 1ro. de abril de 1949 bajo la Ley Federal de Inquilinato de 1947, enmendada en el 1948, se autorizó al Acelerador de Viviendas a reducir el período de espera establecido por la sección 825.6 *(d)* para el inicio de la acción de desahucio, en los casos en que se expidiera un certificado de evicción para promoverla bajo la ley local, tomando en consideración el tiempo transcurrido desde que se notificó originalmente al inquilino.

Ya en vigor, como dijimos, el nuevo Reglamento del Acelerador de Viviendas, se celebró el juicio en el presente caso el 6 de mayo de 1949 y se dictó sentencia el 30 de diciembre. Nada hay en el récord en apelación que indique que la demandante cumpliera con el requisito de obtener del Acelerador de Viviendas el certificado de evicción que le autorizara

"(1) In cases under paragraph (*c*) (5) of this section the waiting period shall be six months;

"(2) In cases under pragraph (*c*) (2) (*a*) of this section the waiting period shall extend at least until two months from the date the certificate is issued;

"(3) In any case where the Expediter finds that by reason of exceptional circumstances extreme hardship would result to the landlord, he may waive all or part of the waiting period."

a iniciar—en este caso *a continuar*, por tratarse de un caso *pendiente*, sección 825.6*(h)* del Reglamento—su acción de desahucio bajo la ley local.

El 21 de junio de 1951 requerimos de las partes que informaran por escrito sobre el efecto que pudieran tener en este litigio las secciones 825.6*(a)* y 825.6*(c)* del ya citado Reglamento.([4]) La demandante sostiene que éste no es aplicable toda vez que entre élla y los demandados nunca ha existido relación contractual de arrendador y arrendatario. Cita a tal efecto el caso de *Porter* v. *Woodard*, 60 S.E. 2d 199 (1950). Tal contención carece de mérito, pues la sección 825.6 *(a)* protege a los inquilinos no obstante no gozar de un contrato de arrendamiento, o haber éste expirado o terminado en cualquier otra forma. El caso de *Porter* v. *Woodard*, supra, no es aplicable al de autos. Allí se interpretaba el alcance de la sección 209 *(c)* de la Ley Federal de Inquilinato y no la 825.6*(c)* del Reglamento cuyo claro lenguaje no deja margen para interpretación.

La demandante admite que de ser aplicable el Reglamento, el certificado de evicción requerido por la sección 825.6*(c)* es necesario, toda vez que la causa del desahucio no se funda en ninguna de las enumeradas en la sección 825.6*(a)*. Sostiene, sin embargo, que la falta de tal certificado no podía impedir que el tribunal inferior dictara la sentencia correspondiente, ya que el mismo no era un requisito jurisdiccional, siendo suficiente obtener—por ser un caso pendiente en corte el 1ro. de abril de 1949—dicho certificado previamente al lanzamiento del inquilino. No tiene razón. Para poder continuar con su pleito de desahucio la demandante tenía que solicitar del Acelerador de Viviendas el certicado de evicción. *Woods* v. *Durr*, 176 F.2d 273, 277. Dicho certificado es una condición precedente, no para el lanzamiento—como lo era el período de espera de sesenta días bajo la sección 209 *(c)* antes de ser eliminada por las en-

---

([4]) La demandante sometió el informe solicitado. Ninguno de los demandados sometió el suyo.

miendas de 1949, *Porter* v. *Woodard*, supra—sino para el *inicio* de la acción bajo la ley local.

Tal condición precedente es materia de prueba y no de alegaciones, según *Glink* v. *Pennell*, 79 N.E. 2d 672, aun cuando el punto de vista que parece prevalecer en la mayoría de las jurisdicciones es que cuando no se alega afirmativamente que se ha obtenido el certificado de evicción, la demanda no aduce hechos constitutivos de una causa de acción. *Ritchie* v. *Johnson*, 144 P.2d 925; *Glano* v. *Johnston*, 199 S. W.2d 649; *Morrison* v. *Hutchins*, 144 P. 2d 922; *Bell* v. *Dennis*, 144 P.2d 938; *Lester* v. *Isaac*, 146 P.2d 524; *Berlinsky* v. *Eisenberg*, 59 A.2d 327.

En el caso de autos, por ser uno pendiente a la fecha en que entró en vigor el reglamento, en ausencia de alegaciones complementarias a tal efecto, la prueba debió haber dejado establecido el hecho de haberse obtenido el certificado de evicción. No habiéndose hecho, resulta insuficiente para sostener la sentencia de desahucio, sin que podamos considerar para curar esa insuficiencia los certificados de evicción(5) que ha sometido la demandante directamente a este Tribunal, expedidos por el Acelerador de Viviendas en 24 de agosto y 6 de septiembre de 1951.

Sin embargo, toda vez que ninguna de las partes en este pleito, ni el tribunal inferior, consideraron el efecto en el caso de las nuevas disposiciones del reglamento federal, al igual que el Tribunal Supremo Nacional en *Woods* v. *Durr*, *Per Curiam*, 336 U. S. 941, 93 L. ed. 1099—véanse *Woods* v. *Durr*, 170 F.2d 976 y el mismo caso, supra—*debemos dejar sin efecto la sentencia y devolver el caso al tribunal inferior con instrucciones de que reabra el caso para dar a las partes la oportunidad de ampliar la prueba únicamente respecto a la obtención del certificado de evicción, hecho lo cual proce-*

(5) La demandante, con fecha 24 de agosto y 10 de septiembre de 1951 compareció por escrito ante este Tribunal con sendas mociones informando "Actuaciones administrativas" del Acelerador de Viviendas, acompañando a las mismas certificados de evicción expedidos por dicho funcionario en los casos de los demandados apelantes.

*derá a dictar la sentencia que corresponda de acuerdo con los hechos y la ley y consistente con esta opinión.*

Opinión concurrente emitida por el Juez Presidente Señor Todd, Jr.

No obstante haber disentido en los casos de *Vélez* v. *San Miguel,* 68 D.P.R. 575; *Vidal* v. *Mason,* 68 D.P.R. 600; *Vidal* v. *Corte,* 71 D.P.R. 582 y *Díaz* v. *Morales,* 71 D.P.R. 692, citados en la opinión del Tribunal, concurro en la misma pues considero que los hechos en el presente caso hacen inaplicables los razonamientos expuestos en mis opiniones disidentes en dichos casos. Me explico. Aquí a la demandante se le prohibió expresamente arrendar los apartamentos del Falansterio y los demandados tenían conocimiento de dicha prohibición. Por tanto, la actuación de la demandante al aceptar y de los demandados al pagar, las mismas u otras sumas de dinero, no fué en concepto de cánones de un arrendamiento que no podía válidamente existir entre las partes.