EULOGIO RIERA ET AL., demandantes y recurridos, *v.* PEDRO A. PIZÁ ET AL., demandados y recurrentes.

*Número:* 12566.  *Resuelto:* 25 de abril de 1962.

*Leopoldo C. Delucca,* abogado de los recurrentes; *R. García Cintrón,* abogado de los recurridos.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Por documento privado de 21 de diciembre de 1949, los hermanos Riera dieron en arrendamiento a Pedro A. Pizá un solar de 2,146.90 metros cuadrados[1] sito al sur del barrio Puerta de Tierra de San Juan, por un canon de $150 mensuales y por término de un año a vencer el día 31 de diciembre de 1950. Después del vencimiento del contrato y hasta el 30 de septiembre de 1952, Pizá continuó disfrutando la posesión del solar mediante arrendamiento de mes a mes y bajo los demás términos y condiciones del contrato original.

Antes del 30 de septiembre de 1952 los hermanos Riera notificaron a Pizá que si pensaba continuar disfrutando del solar tendría que pagar un canon de arrendamiento de $350 mensuales a partir del 1ro. de octubre de 1952.[2] Trans-

[1] Se trataba de un solar vacío en el que el arrendatario construyó posteriormente una casa de madera de 8 por 10 pies de frente e igual dimensión de fondo, usando la parte de atrás de la caseta para guardar baterías, herramientas y gomas de automóviles y la parte del frente la usaba un empleado encargado de la venta de automóviles usados.

[2] Para el año 1950–51 este solar estaba tasado para fines contributivos en $21,470 y se pagaban $710.66 como contribución territorial sobre el mismo. Para el año 1951–52 y años siguientes el solar fue tasado en $85,250 pagándose una contribución de $1,790.25.

currido dicho mes de octubre, Pizá no pagó el canon de $350 y entonces los hermanos Riera le notificaron que habían dado por terminado el contrato de arrendamiento y le requirieron para que desalojara y les entregara el solar arrendado a más tardar el día 31 de diciembre de 1952. Pizá no desalojó el solar pero consignó en Corte los cánones correspondientes a los meses de octubre, noviembre y diciembre de 1952 a razón de $150 mensuales.

Así las cosas, en enero de 1953 los hermanos Riera interpusieron acción de desahucio contra el arrendatario por vencimiento del término del contrato que, como se ha dicho, ellos habían dado por terminado al 31 de diciembre de 1952. En esta acción intervino el Administrador de la Oficina de Administración de Inquilinato de Puerto Rico y al igual que el arrendatario demandado formuló alegaciones al efecto de que el solar arrendado era una "propiedad de alquiler" bajo las disposiciones de la Ley de Alquileres Razonables, y por consiguiente, que no procedía el desahucio por la causal de la expiración del contrato y además que el Tribunal carecía de jurisdicción por no haberse dado al arrendatario el aviso previo a la radicación de la demanda requerido por la Sección 12 B de la Ley de Alquileres Razonables. Visto el caso en sus méritos el Tribunal Superior dictó sentencia el 27 de marzo de 1953 que enmendó por una resolución posterior, decretando el desahucio del demandado Pizá dentro de 90 días desde que la sentencia fuera firme y además ordenó la suspensión de los procedimientos hasta que transcurriera el término de seis meses que contempla el citado artículo 12 B de la Ley de Alquileres Razonables.

No estando conforme con aquella parte de la sentencia que extendía a 90 días el término para el desalojo y con aquélla que decretaba la suspensión de los procedimientos, los allí demandantes apelaron de dichos pronunciamientos para ante este Tribunal. Estando pendiente de resolución dicho recurso, el demandado desalojó el solar el día 1ro. de

junio de 1954 y tiempo después solicitó la desestimación del recurso de apelación por académico. Con la oposición por escrito de los demandantes-apelantes, este Tribunal declaró con lugar dicha solicitud en el mes de agosto de 1955 y desestimó el recurso. Antes de desestimarse el recurso los abogados de las partes habían sostenido conversaciones con el objeto de llegar a un entendido en cuanto al valor razonable del uso del solar por el señor Pizá, conversaciones éstas que acordaron diferir hasta que se resolviera en definitiva el recurso de apelación. Al desestimarse dicho recurso en la forma ya explicada, Pizá se negó a pagar compensación adicional alguna por el uso de dicho solar desde el 1ro. de enero de 1953 al 31 de mayo de 1954.

Fue entonces que los hermanos Riera radicaron demanda contra Pedro A. Pizá en cobro del valor razonable por el uso del solar durante el período antes mencionado, el cual alegaron era de $350 mensuales, o sea, un total de $5,950, de la cual cantidad el demandado había depositado en corte y los demandantes habían retirado sin perjuicio de su derecho a reclamar el balance, la suma de $2,550, y solicitaron sentencia por dicho balance montante a $3,400, más las costas y honorarios de abogado.

Contestó el demandado aceptando algunos hechos y negando otros. Como defensas especiales alegó (a) que los demandantes estaban impedidos de deducir esta acción (*collaterally estopped by judgment*) en virtud de la sentencia dictada en el caso de desahucio, la que resolvió que el solar arrendado era una "propiedad de alquiler" sujeta a las disposiciones de la Ley de Alquileres Razonables; (b) que los demandantes no solicitaron ni obtuvieron autorización de la Administración de Estabilización Económica, Oficina de Inquilinato, para aumentar el canon de arrendamiento convenido entre las partes, y (c) que estando el solar bajo la Ley de Alquileres Razonables, los demandantes nunca

tuvieron autorización legal para aumentar el canon de arrendamiento sin el consentimiento del arrendatario. El demandado dedujo además una reconvención reclamando $30,000 de daños y perjuicios[3] y $900 por 6 meses de alquiler a razón de $150 mensuales.

Celebrado el juicio en los méritos, el Tribunal Superior dictó sentencia condenando a la parte demandada[4] a pagar a los demandantes la suma de $3,400 más las costas y $400 para honorarios de abogado y declaró sin lugar la reconvención en cuanto a los $900 reclamados.

Esta es la sentencia objeto de revisión en el presente recurso. Los demandados recurrentes señalan la comisión de los siguientes errores:

*"Primer Error:*—Erró el Tribunal Sentenciador al interpretar la sentencia dictada por el mismo por voz de otro magistrado y en otro pleito entre las mismas partes, en el sentido de que dicha sentencia no resolvió que la propiedad objeto del presente pleito estaba regida por la Ley de Alquileres Razonables de 1946.

*"Segundo Error:*—Erró el Tribunal Sentenciador al resolver que la parte demandante no está impedida colateralmente por sentencia (*collaterally estopped by judgment*) de ejercitar la presente acción.

*"Tercer Error:*—Erró el Tribunal al resolver que un arrendador puede, durante el arrendamiento, unilateralmente aumentar el canon de arrendamiento sin el consentimiento del arrendatario.

*"Cuarto Error:*—Erró el Tribunal Sentenciador al resolver que el valor de la ocupación de un solar puede exceder los cánones de arrendamiento pactados." (Alegato de los Apelantes, página 5.)

El Tribunal de instancia resolvió que en el pleito de desahucio no se había adjudicado que el solar arrendado

---

[3] El Tribunal sentenciador ordenó la eliminación de esta reclamación de $30,000 quedando fuera del litigio ese hecho.

[4] Por fallecimiento del señor Pizá, fue sustituído por su viuda doña Carmen Goenaga Vda. de Pizá y su hija doña Carmen Pizá Goenaga.

fuera una "propiedad de alquiler" sujeta a las disposiciones de la Ley de Alquileres Razonables. Tal pronunciamiento puede ser o no correcto. No tenemos dudas de que tanto el demandado como la interventora, Oficina de Administración de Inquilinato de Puerto Rico, pusieron en controversia en el pleito de desahucio la cuestión de si el solar objeto del litigio estaba cubierto por la Ley de Alquileres Razonables y de que efectivamente dicha cuestión se litigó en el mencionado pleito. Lo que no resulta fácil determinar es si la cuestión se adjudicó en uno u otro sentido. Por un lado, el Tribunal sentenciador en el pleito de desahucio, formula conclusiones al efecto de que el desahucio estaba predicado en la expiración del término de duración del arrendamiento del solar conforme lo disponen los artículos 1459 (1) y 1471 del Código Civil de Puerto Rico. Citando el caso de *Roselló* v. *Figueroa*, 74 D.P.R. 432, concluyó también que un contrato de arrendamiento que no tiene término fijo de duración y el canon se paga a razón de un tanto mensual, se entiende hecho por meses, pudiendo el arrendador darlo por terminado al finalizar cualquier mes. Por otro lado concluye que basta que la arrendataria interese, de buena fe dedicar la propiedad a su propio uso, independientemente de la naturaleza de ese uso para que proceda el desahucio. Concluye además, invocando el Artículo 12 B de la Ley de Alquileres Razonables que era necesaria la notificación por escrito de modo fehaciente por los demandantes al inquilino de su intención de recobrar la propiedad con no menos de seis meses de antelación a la fecha de la presentación de la demanda de desahucio, así como que el tribunal decretara la suspensión del procedimiento en toda acción en que no se hubiese hecho dicha notificación y hasta que transcurra el término de la misma. Al decretar el desahucio, el Tribunal aplicó los términos estatuidos para el desalojo en el Artículo 12 B de la Ley de Alquileres Razonables y

además decretó la suspensión de los procedimientos hasta que transcurrieran los seis meses que contempla el citado Artículo 12 B. ▮

Si el solar arrendado no era una "propiedad de alquiler" sujeta a la Ley de Alquileres Razonables, estos dos pronunciamientos eran erróneos. Mas si el Tribunal entendió lo contrario, estaba haciendo la adjudicación de que la Ley de Alquileres Razonables cubría dicha propiedad.([5]) Precisamente por ser dichos pronunciamientos contrarios a la teoría de la demanda de desahucio, los allí demandantes apelaron para ante este Tribunal de aquella parte de dicha sentencia que extendía el término del desalojo a 90 días y decretaba la suspensión de los procedimientos de acuerdo con el Artículo 12 B de la Ley de Alquileres Razonables.

Partiendo pues de la base de que la sentencia de desahucio resolvió que el solar arrendado estaba sujeto a las disposiciones de la Ley de Alquileres Razonables y que dicha sentencia se convirtió en firme al desestimarse la apelación interpuesta contra la misma por los demandantes, ¿están éstos impedidos colateralmente por dicha sentencia de ejercitar la presente acción? ▮

La doctrina de impedimento colateral por sentencia, según apuntan correctamente los recurridos, es tan sólo un aspecto de la doctrina de cosa juzgada. 95 L. Ed. 42; 65 Harv. Law Rev. 818, 840. La doctrina de cosa juzgada impide que se litigue en un pleito una reclamación que se litigó y adjudicó o pudo haberse litigado y adjudicado en un pleito anterior entre las mismas partes y sobre la misma causa de acción. *Laloma* v. *Fernández,* 61 D.P.R. 569; *Carrión*

---

([5]) El solar arrendado no se convirtió en una "propiedad de alquiler" por la construcción de la caseta que se erigiera en el mismo durante el término del contrato. *Riera* v. *Tribunal Superior,* 79 D.P.R. 635. Las disposiciones de la Ley de Alquileres Razonables no son aplicables a casos de desahucio de propiedades que están exentas o que no están cubiertas por dicha Ley. *Cf. Asociación Cooperativa* v. *Navarro,* 73 D.P.R. 145.

v. *Lawton*, 44 D.P.R. 463; *Manrique Gil* v. *Goffinet*, 37 D.P.R. 336. Y la doctrina de impedimento colateral impide que se litigue en un pleito cualquier cuestión de hecho, y a veces de derecho, realmente litigada y adjudicada en un pleito anterior entre las mismas partes aunque sobre una causa de acción distinta de la litigada y adjudicada en el pleito anterior. *Tartak* v. *Tribunal de Distrito*, 74 D.P.R. 862. Sin embargo, en los tribunales insulares la doctrina de impedimento colateral no puede invocarse con éxito en un pleito cuando la apelación interpuesta contra la sentencia que constituiría el impedimento, es desestimada por académica, contra la oposición de los apelantes y sin culpa de éstos. Esta cuestión fue ya resuelta en el caso de *Gelpí* v. *Tugwell*, 123 F.2d 377. Se dijo en dicho caso, que como a la apelante se le había privado de obtener la revisión de la sentencia de la corte inferior, sin culpa de ella, porque en el entretanto, la apelación se había convertido en académica, dicha sentencia no constituía cosa juzgada de las cuestiones envueltas, en un litigio posterior basado en una causa de acción distinta, y que la apelante estaba en libertad de atacar colateralmente la orden ejecutiva de destitución bien en un pleito sobre reclamación de salarios o en cualquier procedimiento adecuado para determinar su elegibilidad a ocupar cargos públicos en el futuro. Véase además, *Alleheny Country, Pa.* v. *Maryland Casualty Co.*, 146 F.2d 633, 637; 157 A.L.R. 1032; *Restatement Law of Judgments*, Sección 69 (2).

Los recurrentes citan en apoyo de la excepción de impedimento colateral por sentencia, el caso de *United States* v. *Munsingwear, Inc.*, 178 F.2d 204. Este caso fue confirmado por el Tribunal Supremo de los Estados Unidos en 340 U.S. 36–41. En dicho caso los Estados Unidos radicaron una demanda contra Munsingwear, Inc., alegando violaciones a los reglamentos fijando precio máximo a los artículos ven-

didos por la demandada. La primera causa de acción solicitaba la expedición de un *injunction* y la segunda solicitaba la condena en daños triples. Se pospuso la acción por daños triples hasta que se resolviera el pleito de *injunction*. Se siguió el mismo procedimiento en otro pleito idéntico entre las mismas partes pero cubriendo un período posterior. La Corte de Distrito resolvió que los precios de la demandada cumplían con los reglamentos y desestimó la demanda. Los Estados Unidos apelaron para ante la Corte de Apelaciones. Estando pendiente la apelación, cesó el control de los artículos envueltos en el pleito. A solicitud de la demandada la apelación fue desestimada por académica.

La demandada solicitó entonces de la Corte de Distrito que desestimara las acciones por daños triples alegando que la sentencia en el pleito de *injunction* constituía cosa juzgada de las otras acciones. Se concedió la moción y se ordenó el archivo de dichas acciones. La Corte de Apelaciones confirmó y el Tribunal Supremo expidió un auto de *certiorari* para revisar su sentencia.

Al confirmar la sentencia de la Corte de Apelaciones, el Tribunal Supremo se fundó en que de acuerdo con la práctica establecida en las cortes federales, cuando la apelación se convierte en académica, el remedio es solicitar que el tribunal de apelación revoque o deje sin efecto la sentencia apelada y devuelva el caso con instrucciones de que se archive. Dijo el Tribunal, que los Estados Unidos no hicieron tal moción, interpretándose su omisión como una aquiescencia a la desestimación de la apelación y añadió que no hizo uso del remedio que tenía para preservar sus derechos.

No podemos aplicar la doctrina del caso de *Munsingwear* en nuestra jurisdicción. Aquí no prevalece la práctica del sistema federal en que descansa la decisión de Munsingwear. La práctica que hemos seguido es la de desestimar la apelación cuando la misma se convierte en académica y lo hemos

hecho, como en el presente caso, aun contra la oposición de los apelantes. ■

Sería injusto darle efecto de cosa juzgada a una sentencia del Tribunal Superior cuya revisión por el Tribunal Supremo intentó el apelante, pero que no pudo lograrlo por razones ajenas a su voluntad y sin que mediara culpa suya alguna, y sin que, como en el sistema federal, tenga un remedio para evitar que dicha sentencia adquiera el carácter de firme y final, con efecto de cosa juzgada.

El caso de *Munsingwear* es objeto de una pertinente anotación en 95 L. ed. 42, de la cual copiamos lo siguiente:

"Ahora ha quedado resuelto mediante una decisión de la Corte Suprema de los Estados Unidos que el efecto, como cosa juzgada, de una sentencia de una corte de distrito federal en un caso civil no es afectado por el hecho de que una apelación de ella ha sido desestimada por una corte de apelaciones por el fundamento de que mientras estaba pendiente la apelación el caso se ha convertido en académico, donde el apelante ha estado conforme con dicha desestimación y ha dejado de hacer una moción, de acuerdo con la práctica federal establecida, para revocar o anular la sentencia y devolver el caso con la orden de desestimar, una denegación de dicha moción podría ser revisada por la corte Suprema. *United States* v. *Munsingwear, Inc.*, (1950) 340 U. S. 36, 95 L. ed. 36, 71 S. Ct. 104.

"Tal parece que esta decisión se limita a sentencias dadas en procedimientos originados en una corte de distrito federal, en donde es error el que la corte de apelaciones desestime una apelación por el fundamento de que mientras está pendiente la apelación el caso se ha convertido en académico, siendo la práctica correcta el revocar o anular la sentencia y devolver el caso, con una orden de desestimar la acción, en cuyo caso no se adhiere ningún efecto de cosa juzgada a la sentencia así revocada o anulada.

Donde, sin embargo, la sentencia anterior no fue registrada en una corte de distrito federal, sino en una corte estatal o en una corte local de un territorio o posesión de los Estados Unidos, donde no prevalece la práctica federal, puede que no le sea posible a una parte evitar la desestimación de una apelación por el

fundamento de que el caso se ha vuelto académico, aun si él hace una moción que realizaría dicho resultado en una corte de apelaciones federal."

Lo que dejamos dicho dispone de los primeros dos errores.

Los errores tercero y cuarto son frívolos. Los arrendadores no aumentaron unilateralmente el canon *durante el arrendamiento*, como alegan los recurrentes. "Si bien en septiembre de 1952"—dicen los recurridos—"los Hermanos Riera se dirigieron al señor Pizá informándole que si deseaba continuar ocupando el solar tendría que pagar un canon mensual de $350 a partir del 1ro. de octubre de dicho año, lo cierto es que lo que se está reclamando en la demanda es el valor razonable del uso de la propiedad, no desde octubre 1ro. de 1952 en adelante, sino desde el 1ro. de enero de 1953 en adelante, o sea, a partir del día siguiente a la fecha en que los Hermanos Riera habían dado por terminado el contrato de arrendamiento." Así es en efecto. Por lo tanto, y conforme hemos sugerido en los casos de *Abarca Sanfeliz* v. *Bank of Nova Scotia*, 46 D.P.R. 947; *Ball* v. *Vilá*, 67 D.P.R. 415 y otros,[6] los demandantes recurridos tenían derecho a reclamar del arrendatario el valor razonable del uso del local, a partir de la fecha de vencimiento del contrato de arrendamiento y la prueba demostró que dicho valor era mayor aun que el reclamado por los demandantes y concedido por el tribunal.

*Se confirmará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 31 de enero de 1957.*

[6] *Cf. Asociación Cooperativa* v. *Navarro*, 73 D.P.R. 145; *Pueblo* v. *Mario Mercado*, 72 D.P.R. 792; *Autoridad de Hogares* v. *Sagastivelza*, 72 D.P.R. 276; *Pueblo* v. *McCormick*, 78 D.P.R. 936.