El Juez Asociado Señor Negrón García no intervino.

BLAS MARRERO ALBINO ET ALS., demandantes y recurridos, *v.* BIENVENIDO VÁZQUEZ EGEAN ET AL., demandados y recurrentes.

*Número:* RE-92-141          *Resuelto:* 24 de febrero de 1994

*Héctor F. Molina Román*, abogado de los recurrentes; *José M. Casanova*, abogado de los recurridos.

## SENTENCIA

Es principio fundamental de nuestro ordenamiento constitucional el que una persona no puede ser privada de

su propiedad sin haber tenido la oportunidad de ser oída y sin haber tenido un proceso justo.

I

La situación de hechos que origina la controversia ante nos es, de forma breve, la siguiente:

Como consecuencia de un accidente automovilístico en el cual sufrió daños el policía estatal Blas Marrero Albino, éste y la sociedad legal de gananciales compuesta por él, presentó una acción por daños y perjuicios en el Tribunal Superior, Sala de Bayamón, contra el conductor del automóvil, Bienvenido Vázquez Egean, la Puerto Rican Cars, Inc. (dueña del vehículo y en adelante Puerto Rican Cars) y su aseguradora, Integrand Assurance Company. El emplazamiento del conductor demandado Vázquez Egean fue insuficiente por no cumplir con los requisitos de la Regla 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III.[1] Éste nunca compareció al presente pleito. Luego de una serie de incidentes procesales en dicho tribunal, los demandantes presentaron otra reclamación de daños y perjuicios fundada en los mismos hechos ante el Tribunal de Distrito Federal en Puerto Rico. Esta última fue dirigida únicamente contra *Vázquez Egean*, residente del estado de Pennsylvania, porque solamente con él existía la más perfecta diversidad de ciudadanía como fundamento jurisdiccional federal. Al representante legal de la aseguradora se le hicieron llegar unas copias de la demanda y del emplazamiento mediante edictos realizado.

Finalmente, se celebró una vista en rebeldía ante un magistrado federal, ya que el demandado nunca contestó la

---

[1] En vista de que el texto en español del emplazamiento mediante edicto en el foro estatal, en lo que aquí concierne, es idéntico al edicto que se utilizó en inglés en la corte federal, la insuficiencia del primero se funda en las mismas razones por las cuales sostenemos más adelante que el segundo es también fatalmente defectuoso. Véase Parte II, págs. 4–5.

demanda. El tribunal federal dictó una sentencia a favor de la parte demandante y condenó a la parte demandada a pagar la suma de $60,000, más las costas del pleito. Con posterioridad a la sentencia, los demandantes solicitaron al tribunal federal su reconsideración y dicho tribunal, a base de la prueba presentada en el juicio, aumentó la cantidad concedida a la parte demandante a $90,000.

Los demandantes solicitaron, entonces, ante el Tribunal Superior de Puerto Rico que éste dictara una sentencia sumaria en el pleito pendiente por razón de existir *cosa juzgada* entre dicha acción y la que se había ventilado en el Tribunal de Distrito Federal. Alegaron que la identidad de partes existía en virtud del Art. 5 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, y de los Arts. 20.010 y 20.030 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 2001 y 2003. El tribunal de instancia acogió tal planteamiento y dictó una sentencia sumaria, condenó a Puerto Rican Cars y a su aseguradora a pagar solidariamente la cantidad de $90,000. De dicha sentencia acuden los recurrentes ante nos. Expedimos el auto de revisión solicitado.

## II

Es indudable que para que pueda invocarse la doctrina de cosa juzgada se requiere que la sentencia que se desee oponer sea *válida. Tartak v. Tribl. de Distrito*, 74 D.P.R. 862 (1953); *Vázquez v. A.R.Pe.*, 128 D.P.R. 513 (1991); *P.R.T.C. v. Unión Indep. Emp. Telefónicos*, 131 D.P.R. 171 (1993). "Una sentencia es nula colateralmente cuando la corte que la dicta actúa sin jurisdicción. En tal caso la sentencia nada significa en cuanto a los hechos que se pretendieron litigar y en consecuencia no opera como cosa juzgada (*res judicata*)." *Tartak v. Tribl. de Distrito*, supra, pág. 870. El examen minucioso de los autos del tribunal de instancia y del recurso de revisión presentado ante nos reve-

lan que la sentencia dictada en rebeldía por el Tribunal de Distrito Federal es nula por cuanto dicho foro no adquirió jurisdicción sobre el Sr. Bienvenido Vázquez Egean, único demandado en ese pleito. El aviso de emplazamiento mediante edicto publicado por *El Vocero de Puerto Rico* en la edición de 4 de enero de 1991 resulta fatalmente defectuoso tanto bajo la Regla 4 de Procedimiento Civil federal, 28 U.S.C., como bajo la Regla 4.5 de nuestro cuerpo procesal civil, 32 L.P.R.A. Ap. III.([2]) El edicto se publicó de la forma siguiente:

"UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO Rico Conjugal Partnership (Sociedad de Bienes Gananciales) composed of BLAS MARRERO ALBINO AND HIS WIFE SONIA PADILLA GONZALEZ, Plaintiffs vs. BIENVENIDO VAZQUEZ EGEAN, Respondent Civil Núm. 90–2215 (G.G.) Re: Civil Action (Trial by jury) SERVICE OF SUMMONS BY EDICT The present is a civil action filed by plaintiffs, Blas Marrero Albino, Sonia Padilla González and the Conjugal Partnership composed by both alleging damages suffered by co-plaintiff, Blas Marrero Albino, on July 10, 1987 due to defendant, Bienvenido Vázquez Egean's negligence while driving a motor vehicle at Road Number 22, Kilometer 6.0, Cataño, Puerto Rico. Plaintiffs are requesting $600,000.00 in damages and mental anguish, plus $150,000.00 in punitive damages and attorney's fees. Plaintiffs are represented by counsel José M. Casanova, P.O. Box 3481, Guaynabo, Puerto Rico 00651. Te. 781–9763. in San Juan, Puerto Rico this 12 day of December, 1990. José M. Morales, Clerk of the Court, Acting, José A. Lebrón Albino, Deputy Clerk, (ED-13.464)."

No consta en dicho edicto el término dentro del cual el señor Vázquez Egean debía contestar la demanda. Tampoco se incluyó la advertencia a los efectos de que si no contestaba la demanda se le anotaría la rebeldía y se dictaría la correspondiente sentencia, concediendo así el re-

---

([2]) El cuerpo procesal civil federal permite que se emplace al amparo de ley o regla del estado en que está sita la corte federal a una persona que se encontrase fuera del estado o que no puede ser localizada. Regla 4(e) de Procedimiento Civil federal, 28 U.S.C. Por su parte, la Regla 4(b), 28 U.S.C., dispone que cuando se utiliza el mecanismo provisto por el ordenamiento estatal, el emplazamiento tiene que cumplir con los requisitos de la ley o regla local.

medio solicitado sin más citarle ni oírle. La omisión de dichos apercibimientos viola los requisitos que sobre el contenido del emplazamiento enumeran nuestras Reglas 4.2 y 4.5 de Procedimiento Civil, 32 L.P.R.A. Ap. III([3]) y la Regla 4(b) de Procedimiento Civil federal.([4]) El ordenamiento federal vigente dispone que cuando en un pleito federal se emplazó usando las reglas estatales, no habrá jurisdicción si no se cumple con ellas. Véanse: *Federal Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135–1136 (4to Cir. 1984); *New York State Nat. Org. for Women v. Terry*, 961 F.2d 390, 400 (2do Cir. 1992); *Recreational Properties v. Southwest Mortg. Service*, 804 F.2d 311, 314–315 (5to Cir. 1986); *National Trust for Historic Pres. v. 1750 K Inv.*, 100 F.R.D. 483, 485–486 (1984), confirmado, 755 F.2d 929 (4to Cir. 1985); *Broughton v. Chrysler Corp.*, 144 F.R.D. 23 (1992).

Como se sabe, los requisitos para el emplazamiento son de estricto cumplimiento. *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986). En vista de las limitaciones que impone el debido procedimiento de ley en cuanto a la manera en que se ejecuta el emplazamiento cuando no se cumple

---

([3]) La Regla 4.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone, en lo pertinente, que en el emplazamiento se

"... hará constar el nombre, dirección y teléfono del abogado del demandante, si lo hubiere, o en su defecto la dirección del demandante, *y el plazo dentro del cual estas reglas exigen que comparezca el demandado, apercibiéndole que de así no hacerlo podrá dictarse sentencia en rebeldía en su contra concediendo el remedio solicitado en la demanda.*" (Énfasis suplido.)

La Regla 4.5(10) dispone, en parte, que

"[e]l contenido del edicto deberá constar de la siguiente información:

. . . . . . . . . .

"(10) *Término dentro del cual la persona así emplazada deberá contestar la demanda según se dispone en la Regla 10.1, y advertencia a los efectos de que si no contesta la demanda radicando el original de la contestación ante el tribunal correspondiente, con copia a la parte demandante, se le anotará la rebeldía y se le dictará sentencia concediendo el remedio solicitado sin más citarle ni oírle.*" (Énfasis suplido.) 32 L.P.R.A. Ap. III.

([4]) Dicha regla dispone, en parte, que

"[t]he summons shall [state] the time within which these rules require the defendant to appear and defend, and shall notify the defendant that in case of the defendant's failure to do so judgment by default will be rendered against the defendant for the relief demanded in the complaint." Fed. R. Civ. P. 4(b).

rigurosamente con los requisitos del mismo, el tribunal no adquiere jurisdicción. *Rodríguez v. Nasrallah*, supra, pág. 99; Véase 4 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1074 (1987).

Cuando, como en el presente caso, el emplazamiento se efectúa mediante la publicación de edictos, el cumplimiento riguroso, fiel y preciso de los requisitos que imponen las reglas se hace más necesario. Ello es así, pues el emplazamiento mediante edicto permite a un demandante obtener una sentencia a su favor sin nada más que una notificación mediante publicación que, dicho sea de paso, probablemente pasará desapercibida. De no cumplir con lo dispuesto en la regla que permite el emplazamiento mediante edicto, la sentencia dictada es nula por haber actuado el tribunal sin jurisdicción sobre la persona del demandado. *Ortiz v. The Crescent Trading Co.*, 69 D.P.R. 501, 504 y 505 (1949).

Lo mismo ha dicho el Tribunal de Apelaciones de Estados Unidos para el Primer Circuito al considerar el proceso de emplazamiento mediante edicto al amparo de nuestra Regla 4.5, *supra*, utilizado en un pleito presentado en el Tribunal de Distrito Federal para el Distrito de Puerto Rico. *Senior Loiza Corp. v. Vento Development Corp.*, 760 F.2d 20, 24 (1er Cir. 1985).

En vista de que la sentencia dictada en rebeldía por el tribunal federal era nula porque éste no había adquirido jurisdicción sobre el único demandado en dicho foro, el tribunal de instancia no podía brindarle un efecto de cosa juzgada a dicha sentencia. Véase *Márquez Estrella, Ex parte*, 128 D.P.R. 243 (1991).

*Se revoca la sentencia sumaria dictada por el Tribunal Superior de Puerto Rico, Sala de Bayamón, en el caso Civil Núm. CS-90-5499 el 2 de marzo de 1992 y se ordena la continuación de los trámites judiciales en forma compatible con lo aquí resuelto.*

Lo pronunció y manda el Tribunal y certifica el señor

Secretario General. El Juez Presidente Señor Andréu García emitió una opinión de conformidad, a la cual se unió el Juez Asociado Señor Negrón García. El Juez Asociado Señor Rebollo López emitió una opinión de conformidad. La Juez Asociada Señora Naveira de Rodón emitió una opinión concurrente y de conformidad. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Alonso Alonso.

*(Fdo.)* Francisco R. Agrait Lladó
*Secretario General*

**– O –**

Opinión de conformidad emitida por el Juez Presidente Señor Andréu García, a la cual se une el Juez Asociado Señor Negrón García.

Es principio fundamental de nuestro ordenamiento constitucional que una persona no puede ser privada de su propiedad sin haber tenido la oportunidad de ser oída y sin haber tenido un proceso justo.

I

La doctrina de cosa juzgada tiene un gran peso en nuestro sistema de justicia ya que es realmente "la fuerza que el derecho atribuye normalmente a los resultados procesales. Esta fuerza se traduce en un necesario respeto y subordinación a lo dicho y hecho en el proceso. El proceso, en virtud de la figura de la cosa juzgada, se hace inatacable, y cosa juzgada no quiere decir, en sustancia, sino inatacabilidad de lo que en el proceso se ha conseguido". (Énfasis suprimido.) J. Guasp, *Derecho Procesal Civil*, 2da ed., Madrid, Inst. Estudios Políticos, 1977, T. I, pág. 566. Igualmente, reconocemos que el principio de entera fe y crédito debe permear la aplicación interjurisdic-

cional de la cosa juzgada, atribuyendo así el carácter de finalidad e inatacabilidad a una sentencia dictada en el foro federal.

Sin embargo, este Tribunal ha reconocido en ocasiones que dicha doctrina no debe ser aplicada rígidamente en todo caso; cuando su aplicación resulte en una grave injusticia para una de las partes, debe ser rechazada. En *Díaz Maldonado v. Lacot*, 123 D.P.R. 261, 272 (1989), expresamos:

> La aplicación interjurisdiccional de la doctrina de cosa juzgada y su complemento, la doctrina constitucional de "entera fe y crédito", son áreas del derecho donde no existen normas unitarias. Para determinar la norma de cosa juzgada a aplicar y cuán abarcadora debe ser su aplicación, cada caso debe ser objeto de cuidadoso análisis, tomando en consideración y ponderando, entre otros, factores tales como: el tipo de acción de que se trata; si la sentencia previa es de un tribunal de jurisdicción limitada; el fundamento jurisdiccional que tiene dicho tribunal para entender en el asunto; el derecho sustantivo resuelto (*i.e.* si es uno federal o estatal), y el fundamento utilizado para resolver el caso (*i.e.* si fue procesal, sustantivo o una combinación de ambos). (Escolio omitido y énfasis en el original.)

A pesar de que los tribunales no favorecen que se cuestione una y otra vez la eficacia y corrección de las sentencias, la norma general de aplicación de la doctrina de cosa juzgada tiene unas reducidas excepciones, que deben ser aplicadas sólo en circunstancias muy limitadas. "Por supuesto, a pesar de esa inquietud, lo cierto es que persisten las razones excepcionales que hacen que en contadas ocasiones la finalidad de una sentencia deba ser descartada. *Una de ellas se da cuando la sentencia anterior causa una injusticia grave y manifiesta a la parte afectada. ... El derecho requiere que exista un interés público tras la decisión de relevar a una parte de una sentencia previa manifiestamente injusta que de ordinario tendría efectos de cosa juzgada*". (Énfasis suplido y en el original.) *Ramos González v. Félix Medina*, 121 D.P.R. 312, 340 (1988). Véanse, a

los mismos efectos: *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978); *Pérez v. Bauzá*, 83 D.P.R. 220 (1961).

Por ello, aún en ausencia del grave defecto en el emplazamiento del conductor demandado en el Tribunal de Distrito Federal, lo cual de por sí vicia de nulidad la sentencia dictada por dicho tribunal, consideraciones de justicia y equidad nos hubieran forzado a rechazar la aplicación de la doctrina de cosa juzgada al caso de autos por razón de que ello hubiera resultado en una "injusticia grave y manifiesta a la parte afectada". *Ramos González v. Félix Medina*, supra, pág. 340. No podemos en modo alguno avalar la conducta de una parte que, sabiendo específicamente que uno de los demandados nunca comparecería, acude al foro federal para obtener una jugosa sentencia en rebeldía y oponerla a los otros demandados en el foro local, los cuales *no fueron* incluidos como parte en la acción en la cual se les condenó a pagar la mencionada suma de dinero. Claro está, el haberlos incluido como demandados en la acción federal hubiera tenido el efecto de derrotar la jurisdicción de dicho foro, ya que no hubiera existido una completa diversidad de ciudadanía como base jurisdiccional.

Más aún, los recurridos, en un claro intento por retrasar los procedimientos ante el foro local, solicitaron en dos (2) ocasiones que se suspendiera la vista pendiente sobre la cuestión de daños en dicho foro con el fin de adelantar los del tribunal federal. Este tribunal no hubiera podido condonar tal conducta.

En vista de las anteriores conclusiones, suscribo las expresiones de la Juez Asociada de este Tribunal, Señora Naveira de Rodón, en su opinión concurrente y de conformidad, pág. 189, al efecto de que "en aquellos casos en que se pretenda hacer valer una sentencia contra una persona que no ha sido parte en el caso, el tribunal [debe asegurarse] no sólo [que] la persona que fue parte en el caso haya sido emplazada correctamente, *sino que ... ésta*

*protegió los intereses de la parte ausente de manera justa y adecuada*". (Énfasis suplido.)

**– O –**

Opinión de conformidad emitida por el Juez Asociado Señor Rebollo López.

No tenemos duda alguna sobre el hecho de que la Sentencia que hoy emite el Tribunal en el presente caso es una correcta en derecho. En la misma se resuelve, en síntesis, que el Tribunal Superior de Puerto Rico, Sala de Bayamón, *erró* al dictar sentencia sumaria en el caso de autos; ello en vista del hecho de que la sentencia en que dicho foro basó su determinación sobre cosa juzgada —emitida la misma por el Tribunal de Distrito Federal para el Distrito de Puerto Rico— es nula.

Sobre el hecho de que la referida sentencia carece de eficacia jurídica, no debe haber duda. De entrada, procede que se señale que la demanda que fue radicada ante el foro federal, y que dio lugar a la sentencia en dicho foro, fue radicada ante el mismo al amparo de las disposiciones sobre "diversidad de ciudadanía". 28 U.S.C. sec. 1332. *Es de notar que en tal situación,* entre otras y de acuerdo a las disposiciones de la Regla 4(e) de Procedimiento Civil federal, 28 U.S.C., *los emplazamientos pueden realizarse conforme a las disposiciones procesales pertinentes del foro estatal o local.* Así sucedió en cuanto a la demanda radicada, por el aquí recurrido, ante el foro federal. *Esto es, en dicho pleito federal, y a petición de la propia parte demandante, se emplazó por edicto, al único deudor solidario allí demandado, al amparo de las disposiciones de las Reglas 4.5 y 4.7 de Procedimiento Civil de Puerto Rico,* 32 L.P.R.A. Ap. III.

*La norma imperante en la jurisdicción federal,* en relación a pleitos en el foro federal cuyos emplazamientos son realizados conforme a las reglas de procedimiento estata-

les, *es clara: dichos emplazamientos deben cumplir con los requisitos estatales*. Véanse: Regla 4(b) de Procedimiento Civil federal, 28 U.S.C.; *Fountain Valley Corp. v. Wells*, 98 F.R.D. 679 (1983), confirmado en 728 F.2d 209, *cert.* denegado, 471 U.S. 1107 (1984); *U.S. v. National Muffler Mfg., Inc.*, 125 F.R.D. 453 (N.D. Ohio 1989).

En vista de lo antes expuesto, cobran singular importancia las disposiciones de la Regla 4.5(b)(10) de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. III, la cual establece que en el edicto deberá ·hacerse constar el "[t]érmino dentro del cual la persona así emplazada deberá contestar la demanda" ... y [la] advertencia a los efectos de que si no contesta la demanda ... se le anotará la rebeldía y se le dictará sentencia concediendo el remedio solicitado sin más citarle ni oírle". En el edicto publicado, en el pleito federal, *no* se cumplió con ninguno de estos dos requisitos, los cuales son de estricto cumplimiento; razón por la cual la sentencia en rebeldía que dictó el foro federal fue emitida sin que éste hubiera adquirido jurisdicción sobre la persona del único deudor solidario allí demandado. Véase *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986).

Por otro lado, no puede perderse de vista que las disposiciones constitucionales y estatutarias federales —Art. IV, Sec. 1 de la Constitución federal, L.P.R.A., Tomo 1; 28 U.S.C. sec. 1738— que obligan a darle "entera fe y crédito" a las sentencias judiciales dictadas por jurisdicciones dentro de los Estados Unidos, establecen que a dichas sentencias se les dará, en la "segunda" jurisdicción, la validez que tengan dichas sentencias en la jurisdicción en que originalmente fueron emitidas. *En consecuencia*, resulta obvio que la aplicación, a los efectos de la doctrina de cosa juzgada, de una sentencia en otras jurisdicciones dentro de los Estados Unidos depende de que la referida sentencia haya sido válidamente emitida en la jurisdicción original. Véase 21 Fed. Proc., L. Ed., Sec. 51:189 (1984). Siendo ello así, no venimos obligados en Puerto Rico a concederle "entera fe y

crédito" a una sentencia emitida en el foro federal hasta
tanto nos cercioremos, a la luz de la documentación some-
tida, que la referida sentencia fue emitida por un tribunal
con jurisdicción para ello.(¹)

En el caso ante nuestra consideración tenemos que *con-
sideraciones de debido proceso* causan que sea *nula* la sen-
tencia que fuera originalmente emitida por el foro federal.
La nulidad que afecta dicha sentencia impide que la
misma se haga valer, a los efectos de la doctrina de cosa
juzgada, en nuestra jurisdicción. Véase W.V. Luneburg,
*The Opportunity to be Heard and the Doctrines of Preclu-
sion: Federal Limits on State Law*, 31 (Núm. 1) Vill. L. Rev.
81, 148 (1986).

Resulta, en consecuencia, totalmente innecesario em-
barcarse en la consideración de otras cuestiones, o normas,
para decidir el presente caso. Debe quedar claro que no
tenemos, en principio, objeción alguna a la "norma" de que,
*de ordinario*, consideraciones de justicia y equidad deben
impedir que los tribunales apliquen la doctrina de cosa juz-
gada en contra de un deudor solidario que no fue parte en
un pleito anterior en situaciones en que los intereses de ese
deudor no fueron adecuadamente representados y protegi-
dos por el deudor solidario que fue demandado en dicho
pleito anterior.

Ahora bien, *¿es de aplicación dicha "norma" al caso de
autos?* Creemos que no. En primer lugar, no debe perderse
de vista el hecho de que, como correctamente se señala en
la Opinión disidente del Juez Asociado Señor Fuster Ber-
lingeri, el deudor solidario aquí recurrente fue notificado
de la existencia del pleito ante el foro federal, y, teniendo la
oportunidad de solicitar intervención en el mismo,(²) con el
objetivo de poder defender él mismo sus intereses, así no lo

---

(¹) Sobre la aplicabilidad de la norma de "entera fe y crédito" en las jurisdiccio-
nes estatales respecto a sentencias dictadas por tribunales federales, véanse: *Stoll v.
Gottlieb*, 305 U.S. 165 (1938); *Davis v. Davis*, 461 U.S. 917 (1982).

(²) Véase Regla 24 de Procedimiento Civil federal, 28 U.S.C.

hizo. Igualmente correcto, por otro lado, resulta ser el señalamiento del Juez Fuster Berlingeri a los efectos que los representantes legales de este deudor solidario, aquí recurrente, estuvieron presentes en la vista celebrada ante el foro federal; presencia que les permitió percatarse del hecho de que el deudor solidario demandado, en dicho pleito, estaba "en rebeldía", razón por la cual resultaba obvio para dichos abogados que los intereses de su representado no iban a ser adecuadamente protegidos en dicho procedimiento.(3) Ante estas dos circunstancias, resulta inescapable la conclusión a los efectos de que la alegada "indefensión" de los intereses del deudor solidario, aquí recurrente, se debió, en buena medida, a su propia voluntad y "estrategia forense", por la cual definitivamente puede, y debe, ser responsabilizado.

En conclusión: habiendo sido dictada la sentencia, que se pretende oponer como cosa juzgada, por el foro federal sin jurisdicción sobre la persona del demandado, la misma es nula. En consecuencia, resulta improcedente utilizar dicha sentencia en nuestra jurisdicción a los fines de la defensa de cosa juzgada y, en segundo término, resulta completamente superflua la utilización de cualquier otro fundamento, o norma, en la correcta solución del presente caso. Procede, por consiguiente, la revocación de la sentencia sumaria que dictara el Tribunal Superior de Puerto Rico, Sala de Bayamón, en el caso de autos.

---

(3) Por virtud de lo dispuesto por el Art. 5 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, y en vista de lo dispuesto por el Art. 20.010 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 2001, la compañía dueña del vehículo de motor envuelto en el accidente que originó esta demanda y la compañía aseguradora de ésta, son responsables, respectivamente y de probarse negligencia por parte del conductor del vehículo, de los daños que pueda haber sufrido el demandante en el presente caso.

## – O –

Opinión de conformidad y concurrente emitida por la Juez Asociada Señora Naveira de Rodón.

Estamos conformes con la Sentencia del Tribunal por entender que la norma aplicada, relativa al emplazamiento, es correcta. Sin embargo, consideramos que existe otro fundamento para la revocación de la sentencia del tribunal de instancia. Este es el que a continuación exponemos.

Las normas básicas de justicia que encarnan el debido proceso de ley exigen, para que se pueda aplicar la doctrina de cosa juzgada a deudores solidarios que no fueron parte en el caso anterior, que los intereses de éstos hayan sido adecuadamente representados en dicho caso. El deudor solidario que haya sido parte en el caso donde se emitió la sentencia que dio lugar a la aplicación de la doctrina de cosa juzgada tiene que haber provisto una adecuada representación a los intereses de los otros deudores solidarios que no fueron parte en la acción y a quienes se les pretende aplicar dicha sentencia.

El caso ante nuestra consideración versa sobre una situación de hechos que dio lugar a que se bifurcara la acción en daños surgida como consecuencia de un accidente automovilístico. Los demandantes presentaron, tanto en el tribunal federal como en el Tribunal Superior, acciones en reclamación de daños. Para poder conferir jurisdicción al tribunal federal a base de la doctrina de diversidad de ciudadanía, en dicho foro sólo se incluyó como demandado al conductor del vehículo, Bienvenido Vázquez Egean. En el Tribunal Superior demandaron, además de al conductor, a la dueña del vehículo (Puerto Rican Cars, Inc.) y a su aseguradora (Integrand Assurance Company).

El 20 de agosto de 1991, estando aún pendiente el caso ante el foro local, el tribunal federal emitió una sentencia a favor de la parte demandante, concediéndole una compen-

sación por daños por la suma de $60,000, más las costas del pleito. No satisfecha con esta determinación, la parte demandante solicitó que el tribunal reconsiderase su evaluación de la prueba y aumentase la cuantía. El 17 de septiembre de ese mismo año el tribunal federal acogió favorablemente la solicitud de reconsideración y dictó una sentencia en la que aumentó la cuantía concedida a $90,000. La acción en el Tribunal Superior aún no había concluido.

Así las cosas, los demandantes, sin hacer gestión alguna de cobro contra el conductor demandado en el caso federal, presentaron ante el Tribunal Superior una solicitud de sentencia sumaria fundamentada en la defensa de cosa juzgada. Utilizaron para apoyarse la sentencia emitida previamente por el foro federal. El 2 de marzo de 1992 el tribunal de instancia dictó una sentencia sumaria a favor de la parte demandante. Concluyó que los demandados le eran solidariamente responsables a la parte demandante y que aplicaba la doctrina de cosa juzgada. Inconformes con esta sentencia, los demandados presentaron un recurso de revisión. Alegaron que el foro de instancia se había equivocado al aplicar la doctrina de cosa juzgada y al encontrar que existía solidaridad entre las partes. Decidimos revisar y expedimos el auto.

En virtud del Art. 5 de la Ley de Vehículos y Tránsito de Puerto Rico, Ley Núm. 141 de 20 de julio de 1960, según enmendada, 9 L.P.R.A. sec. 1751, y de los Arts. 20.010–20.030 del Código de Seguros de Puerto Rico, Ley Núm. 21 de 26 de mayo de 1966 (26 L.P.R.A. secs. 2001–2003), no cabe duda que hay solidaridad entre el dueño del vehículo, la Puerto Rican Cars, Inc. (su aseguradora), la Integrand Assurance Company y el conductor Vázquez Egean. *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753 (1981); *González v. Seatrain Lines of P.R.*, 106 D.P.R. 494 (1977).

Es un arraigado principio en nuestro derecho y forma parte esencial e intrínseca del debido proceso de ley, garantizarle a toda persona, cuyos intereses estén en controversia, la oportunidad de ser oída y de defenderse, esto es, de tener su "día en corte". Esta norma de justicia y equidad requiere, como parte indispensable del debido proceso de ley, que en aquellos casos en que se pretenda hacer valer una sentencia contra una persona que no ha sido parte en el caso, el tribunal se asegure de que no sólo la persona que fue parte en el caso haya sido emplazada correctamente, sino que, además, ésta protegió los intereses de la parte ausente de manera justa y adecuada.

En *Cuadrado Carrión v. Romero Barceló*, 120 D.P.R. 434, 446 y 454–455 (1988), con relación a una acción de clase en la cual se permite que una parte represente a otra que está ausente y que, por lo tanto, "pone en peligro el derecho a ser oído que tiene toda persona en el procedimiento donde [van a ser] adjudicados sus derechos", resolvimos que "[s]ólo la adecuada representación de los intereses de los miembros ausentes evita que la acción de clase sea inconstitucional al asegurar que se cumpla con el debido proceso de ley. Sin duda, ante el principio sacramental que exige que toda persona cuyos derechos estén en controversia tenga su 'día en corte', y que nadie pueda ser afectado por una sentencia *in personam* en un procedimiento en el cual no ha sido parte, *Pennoyer v. Neff*, 95 U.S. 714 (1877), la acción de clase constituye, desde el punto de vista conceptual, una anomalía". (Énfasis en el original.) Sobre este particular, los tratadistas Wright, Miller y Kane nos dicen que si a los miembros ausentes de una clase se les va a obligar de forma concluyente con el resultado de una acción traída o defendida por una parte que alegadamente representó sus intereses, nociones básicas de justicia exigen que la representación que éstos recibieron haya sido adecuada: 7A *Wright and Miller, Federal Practice and*

*Procedure* Sec. 1765, págs. 266-267 (1986). Véase, también, *Hansberry v. Lee*, 311 U.S. 32 (1940).

Por estas mismas razones es que siempre hemos exigido el cumplimiento estricto de todos los requisitos para el emplazamiento. En *Rodríguez v. Nasrallah*, 118 D.P.R. 93, 98 (1986), expresamos que "[l]a importancia de tan estricto cumplimiento es que la Regla 4 de emplazamiento persigue que se notifique al demandado que se instó una acción judicial en su contra, de manera que se le dé la oportunidad de ser oído y defenderse". En *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 314 (1950), el Tribunal Supremo federal indicó que es requisito elemental y fundamental del debido proceso de ley que para poderle dar finalidad a la sentencia dictada en cualquier procedimiento, el emplazamiento que se haga sea razonablemente calculado, bajo todas las circunstancias, para apercibir a la parte interesada de la acción pendiente y darle así una oportunidad de presentar sus objeciones.

Siguiendo esta trayectoria de brindarle la mayor protección al derecho de toda persona a ser oída cuando en un pleito se puedan afectar sus intereses, hemos resuelto que cuando un tribunal determina que una situación creada por un abogado amerita la imposición de sanciones, antes de privar a una parte de su día en corte se deben imponer las sanciones al abogado como primera alternativa. También hemos expresado que sólo "procederá la imposición de la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones ... después que la parte haya sido debidamente informada y/o apercibida de la situación y de las consecuencias que puede tener el que la misma no sea corregida". *Maldonado v. Srio. de Rec. Naturales*, 113 D.P.R. 494, 498 (1982). En relación con acciones que afectan el patrimonio de la sociedad de gananciales, hemos determinado la necesidad de incluir a ambos cónyuges como partes y emplazarlos individualmente cuando surja "la po-

sibilidad de que la defensa del interés social por uno solo no se ejercite con la debida eficiencia, o la existencia de incompatibilidad entre los cónyuges respecto a la defensa de su interés dentro de una sociedad que ambos gobiernan con igual autoridad". *Alicea Álvarez v. Valle Bello*, 111 D.P.R. 847, 854 (1982).

En el caso de autos, la parte demandante optó por presentar la misma acción en dos (2) foros distintos. Resulta obvio de los hechos que su intención era responsabilizar y recobrar los daños de la dueña del vehículo (Puerto Rican Cars Inc.) y de su aseguradora (Integrand Assurance Company). Estas codemandadas no fueron partes en la acción federal, aunque sí en la estatal. La sentencia en el foro federal se dictó en rebeldía; no se adujo, pues, defensa alguna. No cabe la menor duda que las demandadas recurrentes no obtuvieron una defensa adecuada en el caso que se ventiló en el foro federal. Bajo estas circunstancias, consideraciones de justicia y equidad impiden que se aplique la doctrina de cosa juzgada contra deudores solidarios que no fueron parte en el pleito federal.

En casos donde se pretenda aplicar la doctrina de cosa juzgada a deudores solidarios, el tribunal debe analizar detenidamente el caso previo para asegurarse de que los intereses de los deudores solidarios contra quienes se pretende aducir dicha defensa fueron representados adecuadamente por el deudor solidario que fue parte en la acción. Nociones básicas de la justicia que encarna el debido proceso de ley exigen tal proceder. El hecho de que los demandados pudieran haber solicitado la intervención en la acción en el foro federal no subsana una falta de adecuada representación. Los demandados reales eran el dueño del vehículo y su compañía aseguradora. La política pública que los hace deudores solidarios requiere, a su vez, que si era contra éstos que realmente pretendía reco-

brarse, se les debió brindar la oportunidad de que sus intereses fuesen adecuadamente protegidos.

En lo que respecta a la aplicación de la presunción de cosa juzgada, reiteradamente hemos resuelto que ésta se aplicará sólo cuando exista una sentencia previa válida y definitiva dictada por un tribunal con jurisdicción sobre la materia y sobre la persona. *Tartak v. Tribl. de Distrito*, 74 D.P.R. 862 (1953); *Millán v. Caribe Motors Corp.*, 83 D.P.R. 494 (1961); *Seijo v. Mueblerías Mendoza*, 106 D.P.R. 491 (1977).([1]) También hemos establecido como norma que no aplicaremos la doctrina de cosa juzgada cuando estén presentes cuestiones importantes de política pública que así lo exijan. *Pérez v. Bauzá*, 83 D.P.R. 220 (1961); *Millán v. Caribe Motors Corp.*, supra; *Riera v. Pizá*, 85 D.P.R. 268 (1962); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987); *Ramos González v. Félix Medina*, 121 D.P.R. 312 (1988). Por imperativo del debido proceso de ley, en justicia y equidad no se puede aplicar la doctrina de cosa juzgada contra deudores solidarios cuyos intereses no estuvieron adecuadamente protegidos en el pleito anterior.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual se une el Juez Asociado Señor Alonso Alonso.

La mayoría hoy da al traste con fundamentales principios de las doctrinas de cosa juzgada y de responsabilidad solidaria al favorecer la estrategia de litigación de la parte demandada sobre la del demandante. Además, al validar

---

([1]) Con respecto a la jurisdicción, resulta importante tener presente que "los tribunales tenemos el deber y la ineludible obligación de examinar si tenemos jurisdicción .... [N]os corresponde siempre ser los guardianes de nuestra jurisdicción, no siendo óbice para ello el hecho de que la cuestión no se nos haya planteado". *Villanueva v. Hernández Class*, 128 D.P.R. 618, 660 (1991), opinión disidente del Juez Asociado Señor Hernández Denton.

las maniobras judiciales de la compañía de seguros y la corporación asegurada frente a las del infortunado servidor público que las demandó, la mayoría menoscaba también fundamentales principios sobre la deferencia (*comity*) que merecen determinadas decisiones de los tribunales federales en un sistema jurídico como el nuestro. Finalmente, con su inusitada decisión, para la cual extrañamente se invocan consideraciones de justicia y equidad, la mayoría permite más demoras en los procesos judiciales y dilata aún más que la víctima de un accidente automovilístico reciba la indemnización a que incuestionablemente tiene derecho, luego de transcurridos casi *siete años* de haber sufrido graves daños sin reparación alguna.

Para entender el desacierto jurídico de la mayoría, es menester tener bien en claro los hechos esenciales de este caso, *que son más complejos que los relatados en la sentencia de mayoría.*

## I

Estando de vacaciones en Puerto Rico, Bienvenido Vázquez Egean, residente del estado de Pennsylvania, alquiló un automóvil a la compañía Puerto Rican Cars, Inc. (en adelante Puerto Rican Cars) que hacía negocios en la isla bajo el nombre de Hertz Rent A Car. El 10 de julio de 1987, mientras conducía el mencionado carro, Vázquez impactó al policía estatal Blas Marrero Albino quien transitaba en una motora. Marrero recibió fuertes golpes a causa del accidente, por lo cual estuvo ausente treinta días de su trabajo recibiendo tratamiento médico. Eventualmente, la Comisión Industrial le determinó un 25% de incapacidad de sus funciones fisiólogicas generales como resultado del accidente.

El 28 de octubre de 1987 Marrero, su esposa y la sociedad de gananciales entablaron una acción por daños y perjuicios en el Tribunal Superior, Sala de Bayamón, contra

Vázquez, la Puerto Rican Cars y su aseguradora, Integrand Assurance Company (en adelante Integrand). Integrand y Puerto Rican Cars presentaron una moción de desestimación mediante la cual alegaron que la demanda no aducía una causa de acción contra ellos hasta tanto el Administrador del Fondo del Seguro del Estado resolviera el caso. El tribunal desestimó la demanda sin perjuicio.

El 26 de septiembre de 1989 Marrero fue finalmente dado de alta por la Comisión Industrial, y el 5 de septiembre de 1990 los demandantes presentaron nuevamente la anterior acción ante el Tribunal Superior. El 13 de septiembre de ese año los demandantes acudieron, además, al Tribunal de Distrito Federal y presentaron una acción fundamentada en los mismos hechos en la cual solicitaron $750,000 en resarcimiento por daños, pero la demanda fue dirigida únicamente contra Vázquez porque solamente contra él se cumplía el requisito jurisdiccional de diversidad de ciudadanía. El emplazamiento de Vázquez se hizo mediante edicto por no encontrarse éste en Puerto Rico, y el edicto fue publicado por *El Vocero de Puerto Rico* el 4 de enero de 1991. *Copia de la demanda federal, del emplazamiento y del edicto fueron enviadas al representante legal de la compañía aseguradora el 6 de febrero de 1991.*

A pesar de que bajo el Código de Seguros de Puerto Rico un asegurador es absolutamente responsable por los daños cubiertos por una póliza (26 L.P.R.A. sec. 2001) y de que hemos reconocido la responsabilidad sustantiva del asegurador hacia el perjudicado (*Cortés Román .v. E.L.A.*, 106 D.P.R. 504 (1977)), el 15 de marzo de 1991 el representante legal de la compañía aseguradora, como parte de su estrategia litigiosa *compareció ante el foro federal y presentó una moción informativa en ese tribunal* alegando, *inter alia*, que el demandado Vázquez no era un asegurado de dicha compañía y que el abogado suscribiente sólo la representaba en el pleito que Marrero había presentado en el Tribunal Superior de Puerto Rico.

El 31 de julio de 1991 se celebró una vista en rebeldía ante un magistrado federal que promovió la parte demandante por no haber presentado el demandado alegación responsiva alguna en el foro federal. El 20 de agosto de 1991 el Tribunal de Distrito Federal emitió una sentencia a favor de la parte demandante por la suma de $60,000, más las costas del pleito. Surge de la breve opinión del magistrado federal que acompaña dicha sentencia que en la vista en rebeldía testificaron Marrero y su esposa, al igual que el perito médico de los demandantes. También se tomaron en cuenta los documentos correspondientes del Fondo del Seguro del Estado y de la Comisión Industrial. Los recurridos alegaron ante el tribunal de instancia, y lo han reiterado ante nos, que a la vista en rebeldía ante el foro federal *también compareció el representante legal de la aseguradora, quien solicitó, sin éxito, la suspensión de la vista, permaneciendo entonces durante la misma como oyente.* Estas alegaciones nunca han sido refutadas por la parte recurrente.

El 21 de agosto de 1991 la parte demandante solicitó del foro federal la reconsideración del monto de la sentencia dictada el día antes. El 17 de septiembre de ese año el Tribunal de Distrito Federal acogió favorablemente la solicitud de reconsideración y dictó una sentencia enmendada por la suma de $90,000 a favor de la parte demandante.

Amparados por la sentencia federal a su favor, los demandantes solicitaron entonces una sentencia sumaria en el pleito que estaba aún pendiente en el Tribunal Superior de Puerto Rico. Plantearon que existía cosa juzgada entre la acción que se acababa de ventilar en el foro federal y la acción que estaba por dilucidarse en el Tribunal Superior. Alegaron que había identidad de partes en una acción y la otra porque el demandado en el pleito federal y las demandadas en el pleito local eran solidariamente responsables en virtud tanto del Art. 5 de la Ley de Vehículos y Tránsito de Puerto Rico, 9 L.P.R.A. sec. 1751, como de los Arts.

20.010 y 20.030 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 2001 y 2003.

Mientras ocurrían los incidentes antes relatados en el Tribunal de Distrito Federal, también se desarrolló la acción entablada en el Tribunal Superior de Puerto Rico. Allí la demanda fue contestada oportunamente por todos los demandados, menos Vázquez. Durante los primeros meses de 1991 se llevaron a cabo los procedimientos de descubrimiento de prueba, las reuniones y las conferencias previas al juicio. En una de estas reuniones, celebrada el 18 de marzo de 1991, *las demandadas recurrentes enmendaron sus alegaciones a los fines de aceptar su responsabilidad por la negligencia del conductor, dejando pendiente solamente la cuestión de daños.* El tribunal de instancia señaló una vista en su fondo para el 10 de junio de 1991, pero la misma fue suspendida en dos ocasiones a solicitud de la parte demandante.

Las demandadas en el Tribunal Superior objetaron a la moción de sentencia sumaria que la parte demandante presentó allí al amparo de la sentencia federal. Alegaron que ellas no habían sido partes en el pleito federal y que no habían tenido la oportunidad de controvertir los daños alegados por la parte demandante. Negaron que la sentencia federal constituyese cosa juzgada en cuanto a ellas e invocaron sus derechos bajo el debido proceso de ley.

El 2 de marzo de 1992 el tribunal de instancia acogió favorablemente la moción de sentencia sumaria de la parte demandante y dictó una sentencia a su favor, condenando a Puerto Rican Cars y a su compañía aseguradora a pagar solidariamente la suma de $90,000. Éstas acudieron ante nos en revisión; alegan que el tribunal de instancia erró al aplicar en su contra la doctrina de cosa juzgada y al encontrar solidaridad entre las partes. El 1ro de mayo de 1992 expedimos el auto de revisión solicitado.

## II

Como puede observarse de los hechos antes relatados, tanto la parte demandante como la parte demandada desarrollaron sendas estrategias de litigación girando en torno al hecho de que en Puerto Rico los pleitos como el de autos son susceptibles de ser dilucidados tanto en los tribunales del país como en el Tribunal de Distrito Federal para el Distrito de Puerto Rico. Surge claramente de los eventos litigiosos ya narrados que *ambas partes* siguieron sus cursos de acción deliberadamente, a plena conciencia de lo que hacían.

Independientemente de las preferencias que podamos tener sobre el particular y de los señalamientos al respecto de la crítica erudita,[1] en derecho es claro que la existencia de la jurisdicción por diversidad de ciudadanía en el Tribunal de Distrito Federal le ofrece a los litigantes, particularmente a las partes demandantes, la opción de escoger el foro que más le convenga para dilucidar sus reclamaciones judiciales. Dentro de determinados límites, es enteramente permisible manipular los aspectos procesales de un pleito para lograr que el mismo se ventile en el Tribunal de Distrito Federal o en los tribunales de Puerto Rico, según se prefiera. C.A. Wright, *The Law of Federal Courts*, 4ta ed., 1983, págs. 164–175; 14 *Wright, Miller and Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters (Federal Question Jurisdiction — Diversity Jurisdiction)* Secs. 3637–3642 (1985).

En este caso la parte demandante optó por demandar en

---

[1] Desde sus comienzos históricos hace más de doscientos años, la jurisdicción por diversidad de ciudadanía ha sido objeto de las más severas críticas. Entre los distinguidos juristas que han favorecido la eliminación de esta categoría de jurisdicción federal se encuentran figuras de la talla de los Jueces Jackson y Frankfurter del Tribunal Supremo federal. Muchos estudiosos de este campo también lo han propuesto. En general, véanse: H.J. Friendly, *The Historic Basis of Diversity Jurisdiction*, 41 Harv. L. Rev. 483 (1928); F. Frankfurter, *A Note on Diversity Jurisdiction*, 79 (Núm. 7) U. Pa. L. Rev. 1097 (1931); H. Wechsler, *Federal Jurisdiction and the Revision of the Judicial Code*, 13 L. & Contemp. Probs. 216 (1948); C.A. Wright, *The Law of Federal Courts*, 4ta ed., 1983, págs. 127–137.

el foro federal solamente al demandado respecto al cual existía diversidad de ciudadanía, y ello es enteramente válido siempre y cuando ninguno de los otros demandados excluidos de la acción federal haya sido parte "indispensable". *Moore's, Federal Practice* Rules Pamphlet, Part I, pág. 204 (1993); J.W. Reed, *Compulsory Joinder of Parties in Civil Actions*, 55 (Núm. 3) Mich. L. Rev. 327 (1957); *Wright*, supra, pág. 170. Véase, también; *Shields v. Barrow*, 15 L.Ed. 198 (1854); *Camp v. Gress*, 250 U.S. 308 (1919); *Provident Bank v. Patterson*, 390 U.S. 102 (1968); *Fremon v. W.A. Sheaffer Pen. Co.*, 209 F.2d 627 (8vo Cir. 1954); *Harrell & Sumner Contracting v. Peabody Petersen*, 546 F.2d 1227 (5to Cir. 1997); *Lowe v. Ingalls Shipbuilding, A Div. of Litton*, 723 F.2d 1173 (5to Cir. 1984). Aunque bajo la Regla 19(b) de Procedimiento Civil federal, 28 U.S.C., podría argumentarse que por no haberse incluido a las recurrentes se debió desestimar la acción del demandante, el magistrado federal aparentemente no lo entendió así y, tratándose de un asunto sobre la jurisdicción del Tribunal de Distrito Federal para el Distrito de Puerto Rico, no nos compete resolverlo. *Provident Bank v. Patterson*, supra, pág. 125 esc. 22; *Kuchenig v. California Company*, 350 F.2d 551 (5to Cir. 1965); 7 *Wright and Miller, Federal Practice and Procedure: Civil 2d* Sec. 1603; *Moore's*, supra, pág. 206.

Por su parte, las demandadas *claramente optaron por evadir el foro federal*. Nótese que las recurrentes, aunque no fueron incluidas como demandadas en la acción federal, fueron notificadas y eran plenamente conscientes de la existencia de dicha acción, comparecieron limitadamente dos veces al inicio de la misma y *pudieron haber intervenido* bajo los términos de la Regla 24 de Procedimiento Civil federal, 28 U.S.C. Véanse: *Wright*, supra, págs. 501–504; *Wright and Miller*, supra, Vol. 7C, Secs. 1901–1909 (1986); *Atlantis Development Corporation v. United States*, 379 F.2d 818 (5to Cir. 1967); *Natural Re-*

*sources, Etc. v. U.S. Nuclear Reg. Com'n*, 578 F.2d 1341 (10mo Cir. 1978). Más aún, cinco meses antes de que el foro federal dictase la sentencia en cuestión, las demandadas aceptaron su responsabilidad por la negligencia del codemandado Vázquez en el pleito ante el Tribunal Superior, y desde ese momento no podía sostenerse jurídicamente la explicación que antes habían dado para excusar su falta de intervención en el litigio federal (que no eran parte de esa acción). La reclamación del demandante estaba ya claramente cubierta por la póliza y la compañía aseguradora tenía el deber de defender al asegurado que admitía responsabilidad. *Vega v. Pepsi-Cola Bot. Co.*, 118 D.P.R. 661 (1987). En esas circunstancias, las demandadas claramente *debieron intervenir en el pleito federal* para reclamar la desestimación de la acción por falta de diversidad conforme a *Torres v. Hartford Ins. Co.*, 588 F.2d 848 (1er Cir. 1978), ya que para todos los efectos prácticos las recurrentes eran las únicas demandadas reales del caso. Debieron haber reclamado ante el Tribunal de Distrito Federal que la acción en cuestión no podía dilucidarse sin su presencia, la cual destruiría la diversidad y así conseguir la desestimación de la acción, *pero optaron por no hacerlo.* Deliberadamente se arriesgaron a que la acción federal fuese resuelta en contra de Vázquez, su codemandado en la acción estatal, y se convirtiera así en cosa juzgada. *Ramos González v. Félix Medina*, 121 D.P.R. 312, 335 (1988). Si las recurrentes hubiesen solicitado la intervención y *ésta le hubiese sido denegada por el Tribunal de Distrito Federal*, distinta sería su situación procesal ante nos ahora. *Tendrían entonces un fundamento adecuado para su reclamación de que no tuvieron la oportunidad de ser oídas.* Sin embargo, las recurrentes no procedieron así. Sencillamente optaron por no ejercer su deber de solicitar una intervención en el pleito federal y defenderse allí. En vista de ello, y no habiendo encontrado reparos procesales el propio foro federal, debemos concluir que la sentencia federal dic-

tada contra el demandado Vázquez Egean no tiene vicios que se originen en la estrategia de litigación del demandante y que son claramente improcedentes los inusitados pronunciamientos de la mayoría sobre el debido proceso de ley. Las demandadas no tuvieron su "día en corte" en el foro federal porque deliberadamente optaron por no tenerlo.

## III

Lo anterior nos trae entonces al asunto central de este recurso, en lo que a nosotros concierne: ¿qué efecto tenía que dársele, en cuanto a las recurrentes, a la sentencia federal en cuestión en el pleito pendiente ante el Tribunal Superior de Puerto Rico? No cabe duda alguna que de ordinario, en cuanto al demandado Vázquez Egean se refiere, la sentencia federal constituiría cosa juzgada. Ese es el tenor claro de *Díaz v. Navieras de P.R.*, 118 D.P.R. 297 (1987), y *Ninlliat v. Suriñach et al.*, 18 D.P.R. 195 (1912). Ahora bien, ¿cuál sería el efecto respecto a las otras demandadas que han recurrido ante nos?

El Art. 1204 del Código Civil vigente, 31 L.P.R.A. sec. 3343, establece la norma básica de nuestra doctrina sobre cosa juzgada y, en lo que aquí concierne, dicho artículo dispone que:

> Se entiende que hay identidad de personas siempre que los litigantes del segundo pleito sean causahabientes de los que contendieron en el pleito anterior, o estén unidos a ellos por *vínculos de solidaridad o por los que establece la indivisibilidad de las prestaciones entre los que tienen* derecho a exigirlas u *obligación de satisfacerlas.* (Énfasis suplido.)

Hemos interpretado esta disposición aclarando que *"la solidaridad que se persigue es aquella capaz de situar en posición tal a las partes como si fueran una sola en relación a las prestaciones que puedan estar en litigio ..."*. *A & P Gen. Contractors v. Asoc. Caná*, 110 D.P.R. 753 (1981).

En este caso no hay duda alguna sobre la solidaridad existente entre el autor de los daños, Vázquez Egean, y la compañía dueña del vehículo que éste conducía y su aseguradora. La Ley de Vehículos y Tránsito de Puerto Rico hace al dueño del vehículo directa y totalmente responsable de los daños causados por el conductor del mismo, como si los hubiera causado el propio dueño. *González v. Seatrain Lines of P.R.*, 106 D.P.R. 494 (1977). Por otro lado, el Art. 20.010 del Código de Seguros de Puerto Rico, *supra*, hace al asegurador absolutamente responsable cuando ocurre una pérdida cubierta por una póliza suya. A la luz del claro tenor literal y propósitos de esas disposiciones, es menester concluir que frente a la reclamación del demandante las tres partes demandadas en el pleito en el Tribunal Superior estaban *igualmente situadas* desde el punto de vista legal, "como si fueran una sola", en relación con lo que reclamaba la parte demandante. Había indivisibilidad entre ellas respecto a la obligación de satisfacer la prestación exigida. Ello es particularmente cierto a la luz de nuestro reciente pronunciamiento, en el cual resaltamos la *unidad* de la solidaridad en nuestra jurisdicción en casos de responsabilidad extracontractual. *Arroyo v. Hospital La Concepción*, 130 D.P.R. 596 (1992).

Siendo, pues, las compañías demandadas indisputablemente solidarias con Vázquez Egean en su obligación frente a la parte demandante, la sentencia federal contra éste de ordinario las hubiera vinculado inexorablemente, a no ser por lo que señalaremos más adelante. El hecho de que la sentencia federal se dictó en rebeldía no altera esta conclusión. En *Díaz Maldonado v. Lacot*, 123 D.P.R. 261 (1989), reiteramos que, tanto bajo la doctrina federal de cosa juzgada como bajo la doctrina civilista de Puerto Rico sobre cosa juzgada, la decisión de un caso en *rebeldía* constituye una *adjudicación en los méritos* y, por lo tanto, cae bajo el ámbito de dicha doctrina. Esta norma, más el hecho de que las compañías demandadas deliberadamente opta-

ron por no solicitar intervención en el pleito federal y defenderse allí, aun conociendo la estrecha relación procesal existente entre ellas y el codemandado Vázquez Egean, son suficientes en derecho para denegar la contención de las recurrentes de que no han tenido una oportunidad para enfrentar y refutar la prueba de daños en su contra.

## VI

Los señalamientos anteriores, sin embargo, no concluyen definitivamente el análisis del caso ante nos. Quedan otros aspectos por dilucidar que, como veremos, afectan en algo el resultado que consideramos correcto.

En la sentencia de la mayoría se aduce que la sentencia dictada por el Tribunal de Distrito Federal en este caso es nula debido a unos supuestos defectos en el emplazamiento mediante edicto que se realizó allí.

Sobre este asunto es menester hacer varios señalamientos. En primer lugar, debe notarse que *la cuestión no fue planteada ni en instancia ni ante nos por las recurrentes.* Se trata de un asunto que la mayoría levanta por su propia cuenta y por primera vez al momento de emitir su voto, en contravención de nuestra doctrina de no considerar en revisión los asuntos que no se plantearon previamente. *López v. Hosp. Presbiteriano, Inc.*, 107 D.P.R. 197 (1978); *Autoridad Sobre Hogares v. Sagastivelza*, 71 D.P.R. 436 (1950). En segundo lugar, es altamente cuestionable que el defecto aludido sea de tal naturaleza o magnitud que justifique una determinación de que la sentencia federal es *nula*. La realidad innegable en casos como el de autos es que la notificación mediante edicto publicado en periódicos locales probablemente pasará desapercibida por el demandado a quien va dirigido el edicto y quien se encuentra permanentemente ausente de la isla porque no reside aquí. En vista de ello, es difícil comprender el por qué

añadir unos detalles adicionales al edicto publicado en Puerto Rico, como el término exacto dentro del cual debe contestarse la demanda, habrá de tener la eficacia que le atribuye la mayoría. Añadir tales detalles no tendrá ningún efecto práctico real; no conducirá de modo alguno a que el demandado ausente conteste ni que el edicto deje de pasar desapercibido. En un caso como el de marras, la insistencia en el riguroso cumplimiento de las reglas sobre edictos es un tecnicismo vacuo que no justifica declarar nula la sentencia de un foro federal que no encontró tal defecto y que está protegida ante nos por principios jurídicos de deferencia y de entera fe y crédito. Véase *Constitution of the U.S.A.*, (C.R.S., Lib. of Congress, 1982 ed.), págs. 835–870. Véase, también, 28 U.S.C. secs. 1738–1739.

Más aún, existe jurisprudencia federal que claramente sugiere que el defecto en cuestión no es del tipo que invalida la sentencia federal en rebeldía por no ser perjudicial. Véase *Wells v. Rockefeller*, 728 F.2d 209 (3er Cir. 1984); *Newman v. Prior*, 518 F.2d 97 (1975). Véase, también, *Wright and Miller*, supra, Vol. 4C, Sec. 1088 (Sups.1969 y 1982). Tratándose de una cuestión federal propiamente, parecería improcedente que nosotros consideremos nula una sentencia por no cumplir rigurosamente con las normas de emplazamiento federal, cuando los propios tribunales federales no lo considerarían así.

La sentencia de la mayoría llega a extremos por concederle derechos a unas partes que asumieron libremente los riesgos de su estrategia de litigación y que libremente optaron por no acudir al foro federal. Mientras tanto, la persona gravemente perjudicada, el único auténtico titular de derechos en este caso, sigue esperando que se le haga justicia, aun cuando las partes demandadas que la mayoría ha decidido favorecer sobre fundamentos en extremo técnicos, han aceptado ya el hecho fundamental de que son res-

ponsables por la indemnización que se le deba al demandante.

## V

Existe un aspecto de la sentencia federal que sí amerita atención, al hacerla valer en nuestra propia jurisdicción, como debería hacerse. Nuestras normas sobre sentencia en rebeldía, así como las federales, incorporan el claro principio de que cuando se trata de determinar *el importe de daños*, el foro judicial debe celebrar las vistas que sean necesarias para recibir *prueba* de dichos daños. Regla 45.2(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III; *Continental Ins. Co. v. Isleta Marina*, 106 D.P.R. 809 (1978); *Vázquez v. Valdés*, 28 D.P.R. 467 (1920). En este caso, el magistrado federal determinó daños por $60,000 luego de celebrar una vista donde el demandante presentó su prueba. Posteriormente, sin embargo, el magistrado, en reconsideración promovida por la parte demandante, aumentó su sentencia a $90,000, *sin haber celebrado alguna otra vista ni haber recibido prueba o alegaciones adicionales.*

La doctrina de cosa juzgada que hemos desarrollado en Puerto Rico no requiere que hagamos valer aquí esa enmienda a la orden original del magistrado federal. Nuestra doctrina de cosa juzgada exige que sea aplicada con *flexibilidad*. En reiteradas ocasiones nos hemos apartado de la rigurosa aplicación de la doctrina de cosa juzgada cuando razones de interés público o de justicia así lo han requerido. *Pérez v. Bauzá*, 83 D.P.R. 220 (1961); *Millán v. Caribe Motors Corp.*, 83 D.P.R. 494 (1961); *Riera v. Pizá*, 85 D.P.R. 268 (1962); *Feliciano Ruiz v. Alfonso Develop. Corp.*, 96 D.P.R. 108 (1968); *Pagán Hernández v. U.P.R.*, 107 D.P.R. 720 (1978); *Ramos González v. Félix Medina*, 121 D.P.R. 312 (1988). Recientemente, en *Díaz Maldonado v. Lacot*, supra, pág. 272, reconocimos que "[p]ara determinar

la norma de cosa juzgada a aplicar *y cuán abarcadora debe ser su aplicación,*" deben sopesarse un sinnúmero de factores tales como "el tipo de acción de que se trata; ... el fundamento utilizado para resolver el caso" y otros más. (Énfasis suplido.) Reconocimos, también, que en la doctrina federal la norma de cosa juzgada "no tiene que aplicarse, con todos sus efectos, a todos los posibles detalles del caso". *Díaz Maldonado v. Lacot,* supra, pág. 273.

A la luz de estos conceptos, podemos darle vigencia como es debido al principio normativo de que la cuantía de los daños, aun en casos de rebeldía, debe surgir de la prueba presentada. En este caso, el sustancial aumento de la sentencia del magistrado federal de $60,000 a $90,000 no fue el resultado de prueba adicional o de una vista evidenciaria. El demandante solicitó el aumento *sin siquiera alegar daños adicionales* a los que el foro federal ya había reconocido y ponderado. Sencilla y escuetamente se limitó a reiterar sus anteriores alegaciones y a pedir mayor indemnización. El magistrado federal concedió el aumento automáticamente, sin dar una explicación o justificación para ello. Sería, pues, impropio que le apliquemos la doctrina de cosa juzgada a ese aumento en la partida de daños que no ha sido justificado en términos evidenciarios. Debemos ejercitar la discreción que nuestra propia doctrina de cosa juzgada nos da en casos como éste donde los daños adicionales no surjen de nuevas alegaciones ó de nueva prueba, ni se han justificado, y resolver que sólo existía cosa juzgada respecto a las recurrentes en cuanto a la sentencia federal original.

Conforme a los fundamentos antes expresados, modificaría la sentencia del tribunal de instancia, limitando el importe de la misma a la suma de $60,000. Como la mayoría opta por otro curso de acción, que me parece errado e injusto, disiento.